[Civ. No. 8812.    Third Dist.    Feb. 11, 1957.]

ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO, as Special Administrator, etc., Respondent, v. R. N. PHILPOT et al., Appellants.

Lewis, Lewis & Lewis, Pierce & Brown, for Appellants.

Anthony J. Kennedy, Carl Kuchman and Devlin, Diepenbrock & Wulff for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment setting aside a deed of gift to the real property at 1400 I Street in Sacramento from Harry C. Stauffer, deceased, to the four appellants; quieting title in plaintiff as special administrator of the estate of Harry C. Stauffer against their

*Assigned by Chairman of Judicial Council.

claims to the property covered by the deed; and awarding damages against three of them for the rents they received less the value of their services in caring for the property, and also less a lien which the defendant R. N. Philpot had under a second deed of trust upon the property.

The trial court, sitting without a jury, made findings that a relationship of trust and confidence existed between Harry Stauffer and defendants R. N. Philpot and Hilda Kirtlan, and that the deed was obtained without consideration by abuse of their relationship with the aid of J. Robert Philpot. The court also found misrepresentation by R. N. Philpot to Harry Stauffer in obtaining the deed. There is a finding of no delivery. There is a finding that at the time Harry C. Stauffer was 75 years old, suffering from bodily decrepitude and chronic alcoholism and had been without business experience or gainful employment in the preceding 20 years. There is also a finding that Harry C. Stauffer had no independent legal advice or any advice at all save and except that of defendants in executing said deed.

The money damages resulted from an accounting which was done through a referee after an order of reference. The accuracy of his work was stipulated to at the time his report was before the court for confirmation and no exceptions were taken. Thereafter, the court took evidence of the value of defendants' services in caring for the property and determined the amount of R. N. Philpot's lien against the property. These were offset against the conclusions of the referee.

The appellants contend that the findings and the judgment are not supported by the evidence. With this contention we do not agree. Many of the facts in this case are substantially the same as those set forth in the case of *Estate of Stauffer,* 142 Cal.App.2d 35 [297 P.2d 1029], in which the will of Harry C. Stauffer, offered by R. N. Philpot and Hilda Kirtlan, was denied probate.

For many years prior to December 21, 1949, and thereafter until the death of Harry Stauffer in 1952, R. N. Philpot was a real estate broker who managed this property. He was also custodian of Harry Stauffer's money and kept it in his own bank accounts. Hilda Kirtlan was R. N. Philpot's secretary and bookkeeper. J. Robert Philpot and Elizabeth Heilig are an adult son and adult daughter, respectively, of R. N. Philpot. Their names were included as grantees in the deed for the purpose of saving taxes. It was understood by them that title was equally in the names of R. N. Philpot and Hilda

Kirtlan, only. However, R. N. Philpot granted half of his ownership to J. Robert Philpot, and the rents from the building on the property were so intermingled between R. N. Philpot, Hilda Kirtlan and J. Robert Philpot that they could not be traced. The judgment against these defendants for these rents was joint and several. Also, J. Robert Philpot alone kept the rents from the portion of the property that was used as a parking area, and he was held separately liable for them after credits for his expenses. In addition R. N. Philpot was held liable for moneys he took directly from Harry Stauffer's funds.

R. N. Philpot became a real estate broker in 1919 and continued as such until 1947 when he turned his business over to J. Robert Philpot. Hilda Kirtlan was employed in this real estate office for 30 years, managed the office and kept the books, and after the business was taken over by J. Robert Philpot her salary was paid in part by R. N. Philpot and in part by J. Robert Philpot.

R. N. Philpot also lived at his place of business which is across the street from 1400 I Street, the old Stauffer family home. He began handling business affairs for Harry Stauffer's mother, Susanna, a widow of the age of 90 years, in and about the year 1932, and also became the confidant of Harry's sisters, Lillie and Ida, neither of whom had any business experience. He persuaded the Stauffer women to tear down the family house and put up a commercial building. In the year 1942 he managed 1400 I Street under a general power of attorney from Ida Stauffer, Harry Stauffer's elderly spinster sister.

On July 13, 1942, R. N. Philpot, as attorney in fact for Ida Stauffer, executed a lease to the State of California of the premises at 1400 I Street, for a term expiring July 14, 1945. The rents were paid into Philpot's office, and he would pay over money to Ida from time to time when she called for it.

The property in question was conveyed from one member of the Stauffer family to another upon deeds drafted by Hilda Kirtlan and executed in R. N. Philpot's office. One of these conveyances is a deed dated in 1935 transferring said property from Ida Stauffer to Harry Stauffer. Mr. Philpot had this instrument in his possession and recorded it in 1943, shortly after Ida Stauffer died. He later made an affidavit whereby he swore that this deed was delivered many years prior to her death. However, notwithstanding the date of the deed and the facts stated in the affidavit, it was not until after Ida's

death that R. N. Philpot treated Harry Stauffer as owner of the property and entitled to be credited with the rents deposited in the Philpot accounts. No change was made upon Ida's death so far as the tenancy was concerned, and checks for the rent continued to come to R. N. Philpot as agent and to be deposited by Hilda Kirtlan in one or more of his office accounts.

R. N. Philpot testified at the trial that he instructed the State of California to make the rent checks payable to him because the state had directed him to do so. He repudiated this testimony shortly afterwards. Documentary proof showed that he instructed the state repeatedly over the years to make the rent checks payable to himself as agent, without designating for whom he was acting as agent. Commencing in May of 1949 and continuing until May 1, 1951, R. N. Philpot instructed the state to make the rent checks payable to him as "attorney in fact," again without designating for whom he was acting.

These rent payments received by R. N. Philpot and the disbursements made from the fund which they form, were recorded by Hilda Kirtlan in a loose-leaf book appellants called the "Stauffer Account." This began as an account for Ida Stauffer, but upon her death in November of 1943 it was continued for Harry, with a beginning balance of $2,336.30 and went on in this fashion until December 2, 1949, when the balance was $10,219. The rent checks, themselves, for July 8, 1943, until that of April 19, 1946, were made payable to R. N. Philpot, agent, as payee. From April 19, 1946, to December 16, 1948, the warrants, with one exception, were issued to R. N. Philpot, personally, as payee. From May 13, 1949, with one exception, through the warrant of April 26, 1950, the payee was R. N. Philpot, attorney in fact for Harry C. Stauffer. Thereafter, warrants were payable either to R. N. Philpot or R. N. Philpot & Son. There is a summary in the record of all rents paid for 1400 I Street by the State of California from July 7, 1943, until January 22, 1953, which shows that the warrants were endorsed by appellants and deposited in one or another of appellants' own bank accounts or presented for payment at various banks. The referee was unable to trace the money to one or another of the appellants.

The "Stauffer Account" shows that there were other sources of revenue besides rent paid by the State of California, such as parking lot rent, the proceeds from the sale of a house, etc. These are summarized.

The "Stauffer Account" also, along with various vouchers introduced as defendants' exhibits, shows the manner in which money was disbursed for the benefit of Harry Stauffer by R. N. Philpot and Hilda Kirtlan. Payments were made on a loan secured by 1400 I Street, taxes were paid, insurance was purchased, repairs were paid for, small sums of money were given in cash to Harry Stauffer on Wednesdays and Saturdays as he called at Philpot's office for his allowance, after signing a receipt, and clothing bills for Mr. Stauffer were paid. Harry Stauffer was always broke; his allowance from Mr. Philpot never amounted to enough to pay his bills. Hilda Kirtlan fixed the amount of his allowance.

The evidence also shows that at the time said deed was executed Harry C. Stauffer was 75 years old and suffering from bodily decrepitude; that he was without any business experience or gainful employment during the preceding 20 years; and that for many years prior thereto and thereafter he had been a chronic alcoholic; that he had no independent legal advice nor any advice at all save and except that of defendant in executing said deed; that the property described in said deed had a value of approximately $120,000 at the time the deed was executed and constituted all the real estate and substantially all the assets of Harry C. Stauffer.

On July 13, 1942, Ida Stauffer, through R. N. Philpot as attorney in fact, leased the property at 1400 I Street, less the parking area, to the State of California for a term expiring July 14, 1945, but with an option to the state to renew for an additional term of three years. The option was exercised, carrying the tenancy to July, 1948. On July 17, 1948, R. N. Philpot took the power of attorney to himself from Harry Stauffer. Using this, he negotiated a six-month extension of the lease with the state at $2,000 per month until December, 1948. Keeping his activities in leasing a secret thereafter from Harry Stauffer, effective February 21, 1949, R. N. Philpot executed a three-year term lease of the property with the state, less the parking area, at $1,845 per month.

R. N. Philpot, after having thus secretly but securely leased the premises, less the parking area, to a responsible tenant until February 20, 1952, then began to chat with Harry on Harry's twice-weekly visits to the office to get his allowance. He informed Harry in the spring of 1949, with J. Robert Philpot present, that he didn't know what would happen in the way of releasing, requiring remodeling, and he wanted to

refinance the building, to which Harry said "go ahead." Then in the summer of 1949, he again spoke to Harry with J. Robert Philpot present and told him it was imperative to refinance the building because the Oestes, whose loan was secured by it, were "in financial trouble" and demanded their money, to which Harry said, "go ahead." In the fall of 1949 R. N. Philpot again told Harry of a need for a loan to remodel the building and got Harry's "go ahead."

J. Robert Philpot then undertook employment as agent of Harry Stauffer and R. N. Philpot to secure a loan. He represented to the loan agent of California Western States Life Insurance Company that there were plans to remodel the building and he wanted the largest loan obtainable. An appraisal was made and 1400 I Street was valued at $120,000. On November 30, 1949, escrow instructions were filed with the Sacramento Abstract and Title Company, whereby the insurance company agreed to a loan of $45,000 to Harry Stauffer upon Harry's note secured by a first deed of trust on the property at 1400 I Street, Sacramento, and also to pay a $450 commission to J. Robert Philpot for securing the loan. On December 20, 1949, R. N. Philpot filed with the Sacramento Abstract and Title Company, in the same escrow, an instruction signed by himself in which he agreed for Harry Stauffer to accept the loan and its terms, and directed that after the balance of the existing loan was paid the cash remaining was to be paid to R. N. Philpot.

While this transaction was pending, R. N. Philpot and Hilda Kirtlan claim to have had a conversation with Harry Stauffer in which Harry suggested giving them the property. At this time Harry Stauffer believed that there was so much against the property the value of it "don't amount to anything," and Mr. Philpot, notwithstanding the $120,000 appraisal, and the $1,845 a month lease, plus $125 a month from the parking lot, did nothing to correct this misimpression when Harry stated it. All Harry wanted was $500 a month for life, whether the property was rented or not. Mr. Philpot then employed an attorney who, without consultation with Harry, drew up the deed in question on December 21, 1949. Harry Stauffer never had any independent advice. The deed reserved to Harry $500 a month out of the rent, only.

The deed in question contains four grantees. Two of them, J. Robert Philpot and Elizabeth Heilig, R. N. Philpot's children, were dummy names put on to evade gift taxes,

and, by private arrangement among the parties, only Hilda Kirtlan and R. N. Philpot acquired any title. Elizabeth Heilig, in Germany, executed a deed dated April 15, 1950, transferring her one-quarter to Hilda Kirtlan, which deed was sent to her by Hilda with the approval of R. N. Philpot. R. N. Philpot, in Sacramento, acknowledged the deed executed in Germany before it was executed. R. N. Philpot conveyed a one-fourth interest in the property and its income to J. Robert Philpot.

On December 20, 1949, R. N. Philpot and J. Robert Philpot had Harry Stauffer execute the $45,000 note and deed of trust for the loan, and at the same time they claim they had him sign the deed. The deed is dated, as stated hereinbefore, December 21st, a day later. At the trial R. N. Philpot testified the deed was given to him after it was executed, and he kept it in his office until it was recorded in February of 1950. Previously, he had testified by deposition that he did not know what became of the deed after it was signed, including knowing whether or not it was in the possession of Harry Stauffer. The deed was kept secret. A week later the Philpots signed instruments to complete the secured loan of $45,000 to Harry Stauffer.

Neither the title company handling the escrow nor the lending agency had any knowledge of the deed. On December 28, 1950, the title company issued its policy insuring title in Harry C. Stauffer, recorded the loan papers and disbursed the money. Agents of the life insurance company testified that they would not have made the loan had they known of the deed. R. N. Philpot testified on his knowledge as a real estate man that had the deed been recorded the loan could not have been made. J. Robert Philpot testified that had the deed been disclosed he would not have gotten a finder's commission.

In January, 1950, R. N. Philpot & Son, as insurance agents, sent to the California Western States Life Insurance Company a fire insurance policy on 1400 I Street for the period of January 10, 1950 to January 10, 1953, in the beneficial amount of $60,000 showing Harry C. Stauffer as owner, together with a letter dated January 24, 1950, signed by J. Robert Philpot, describing this policy as being on Harry C. Stauffer's property.

On January 7, 1953, R. N. Philpot & Son advised the California Western States Life Insurance Company that "Mr.

Harry C. Stauffer, the former owner, is now deceased." Then, after repeated demands that the present owner be disclosed, J. Robert Philpot, by letter dated February 24, 1953, revealed the deed of December 21, 1949, conveying the property to appellants. The State of California, tenant of 1400 I Street, received no notice of the deed transaction until January, 1952, when a new lease was made with the four grantees as lessors, although Elizabeth Heilig owned no interest. Hilda Kirtlan regards her title as coming under the will of Harry Stauffer, denied probate, rather than under the deed of December 21, 1949.

In June of 1949 R. N. Philpot and Hilda Kirtlan opened a trustee account at the Anglo California Bank for the deposit of Harry Stauffer's money. The balance belonging to Harry on the books of R. N. Philpot & Son was not deposited to this account. For example, on November 29, 1949, the balance in the trustee account was $4,996.57, but R. N. Philpot & Son was holding $8,374.52 of Harry's money. Into this account in December, 1949, went $24,729.96 of the $45,000 loan from California Western States Life Insurance Company. After 1950 all the expenses of maintaining 1400 I Street continued to be paid out of moneys in this trustee account.

From this trustee account the $24,729.96 was disbursed to R. N. Philpot. He tried to cover up this misappropriation by representing that he used the money to pay a $23,000 note he had taken from Ida Stauffer in payment of his services, which note was secured by a lien on 1400 I Street. However, he never satisfied the note even in part.

It appears from the testimony of the witness DeWitt Rice that Harry Stauffer was unaware of having deeded the property and believed the $45,000, after satisfying the existing Oeste loan, was used to put a new roof on the building. He understood that Philpot was talking about forming a corporation to operate his property in December of 1949, but he opposed control by the Philpot family. Other than that, all he knew was that his allowance had been increased to $100 a week about Christmastime of 1949.

In addition to taking the $24,729.96, R. N. Philpot also took $3,920.47 of Harry Stauffer's money, and no accounting was given Harry of these takings.

So far as Harry was concerned, matters continued the same with appellants after December, 1949, as before. Hilda Kirtlan continued to give him his allowance in cash on his twice-weekly visits to the office of R. N. Philpot & Son. His

personal life remained unaltered from what was described. He died in January, 1952, at the age of 77. His last days, however, were not without duplicity by appellants. J. Robert Philpot signed a hospital admission card stating that the nearest relative was R. N. Philpot. Upon his death, R. N. Philpot concealed his will and denied that he left an estate, even though there was still about $5,000 in the trustee account.

While there is evidence that J. Robert Philpot was enjoying Harry Stauffer's income before the deed of gift dated December 21, 1949, after the events of that month the income from the building, $1,845 per month, was divided and expended among Hilda Kirtlan, R. N. Philpot and J. Robert Philpot. The receipts and withdrawals are set forth in the exhibits attached to the referee's report. In addition, a composite statement to these matters is set forth in addendum number 1 to this report. It appears that, commencing in 1950, J. Robert Philpot appropriated personally the receipts from the parking lot, without keeping any record of them. What he received was accepted on his own statement and is reported in the addendum to the referee's report. As already noted, no exceptions have been taken to the accuracy of the referee's work. It is entirely based upon records kept by the appellants, reconciled to pertinent records kept by others, and in the total absence of any records kept by appellants the word of appellants has been accepted at face value.

The trial court found that the appellants R. N. Philpot and Hilda F. Kirtlan, on December 21, 1949, and for many years prior thereto and thereafter until the death of Harry C. Stauffer had a relationship of trust and confidence with Harry, and that Harry placed complete trust and confidence in them, including the handling and management of his real property, and that when they obtained the deed of gift they obtained an undue advantage of Harry. Since the evidence established the existence of an advantage, it follows that the presumptions specified in section 2235 of the Civil Code, that is, the presumptions of insufficiency of consideration and undue influence, are present in the case.

As secretary to R. N. Philpot and also substantially as cotrustee, Hilda Kirtlan shared the same fiduciary obligations. But even if it were determined that she was a mere secretary and bookkeeper and did not have the managerial authority over the trust property, which the evidence discloses, the law still subjects the gain she took from the bene-

ficiary to the same presumptions of insufficient consideration and undue influence as applied to R. N. Philpot. (*Mosser* v. *Darrow,* 341 U.S. 267 [71 S.Ct. 680, 95 L.Ed. 927].) The above finding alone would be sufficient to sustain the decision in this case. (*Bradner* v. *Vasquez,* 43 Cal. 2d 147 [272 P.2d 11], and the many cases cited therein.) There is also a finding of misrepresentation and concealment by appellants with reference to the state of Harry's business affairs and the concealment from him of the value of his property, which is supported by the evidence in the case. Section 2228 of the Civil Code provides that:

"In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind."

Appellants complain that J. Robert Philpot is burdened with a judgment in a larger sum than appellants R. N. Philpot and Hilda Kirtlan. The evidence in the report of the referee, together with addendum number 1 to the referee's report, makes this clear. J. Robert Philpot participated with R. N. Philpot and Hilda Kirtlan in receiving and appropriating the rents from the property, commencing with the month of January, 1950. In addition, J. Robert Philpot exclusively took the parking lot receipts. On the other hand, the trial court awarded an offset to Hilda Kirtlan and R. N. Philpot for the years of property management of 1400 I Street, and the other property of Harry Stauffer. J. Robert Philpot did not participate in this property management other than as to said deposits of Harry Stauffer's money in his accounts occurring prior to December of 1949. He did not have a direct connection with the affairs of Harry Stauffer until his participation in obtaining the deed of December 21, 1949 and the $45,000 loan that was made at the same time. Consequently, he did not enjoy the offset for services that his coappellants did. Accordingly, the trial court recognized and satisfied the $23,000 note and lien Ida Stauffer had given to R. N. Philpot in 1942. This gave R. N. Philpot an offset against his personal liability on the accounting of some $35,000 as of December 29, 1949, when he misappropriated the $24,729.96 in cash. The several liabilities of the other defendants are set forth in the report of the referee, addendum number 2. The accuracy of the account was stipulated to by the parties.

We conclude that the findings and the judgment are fully supported by the evidence in this case.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied March 8, 1957, and appellants' petition for a hearing by the Supreme Court was denied April 10, 1957.