[Sac. No. 6921.   In Bank.   Nov. 30, 1959.]

Estate of HARRY C. STAUFFER, Deceased. ANTHONY J. KENNEDY et al., Respondents, v. GLADYS WOLLEN-BERG, Appellant.

Archibald M. Mull, Jr., Wilke & Sapunor and Clarence H. Pease for Appellant.

Anthony J. Kennedy, Devlin, Diepenbrock & Wulff and Arthur C. Devlin, in pro. per., for Respondents.

SCHAUER, J. — Gladys Wollenberg (one of the beneficiaries named in the will of Harry C. Stauffer) appeals from an order which directs that fees for extraordinary legal services and costs and expenses advanced by respondents (attorneys for the special administrator of Stauffer's estate) be "shared proportionately by each of the heirs, legatees and

beneficiaries of the estate.'' All the property which comprises the estate was recovered by the extraordinary legal services of respondents. Part of such property passes to beneficiaries of the will and part of it, because undue influence vitiated portions of the will, passes by intestate succession.

Appellant-objector contends that the ratable apportionment ordered by the trial court improperly contravenes the California probate rule that, in the absence of a contrary expression of testamentary intent, property not disposed of by the will should be first resorted to for payment of debts and expenses of administration. Respondents urge that such apportionment is proper because, under equitable principles, each of those who benefit by the recovery of the estate property should bear his share of the expenses of recovering it. We have concluded that under the statutory and decisional law of this state the trial court should have applied the probate rule rather than ordering ratable apportionment.

Appellant's argument for application of the probate rule is based largely upon asserted intent of the testator, and respondents' argument for ratable apportionment is based largely upon asserted considerations of fairness. In order that the factual bases of these arguments can be appraised it appears necessary to state the history of Stauffer's disposition of his property and the litigation which followed his death.

Stauffer's will is not in the record on this appeal. The facts concerning the will appear in the opinion in *Estate of Stauffer* (1956), 142 Cal.App.2d 35 [297 P.2d 1029]. The will, executed in 1944, stated that Stauffer made the following devises and bequests: Certain residential realty to Jessie Snyder; improved business realty to R. N. Philpot and Hilda Kirtlan; $5,000 to Michael David Littlefield; $5.00 each to named relatives; $50 a month to a sister, Myra Henry, if there was ''sufficient revenue from the estate to warrant'' such payments; and the residue ''share and share alike'' to Philpot, Jessie Snyder, and Gladys Wollenberg (the present appellant). The will named Philpot executor without bond. When he executed the will Stauffer owned no property which could have passed under the residuary clause if the other dispositions of the will were given effect.

In December, 1949, Stauffer signed a deed of gift of the above mentioned business property (then valued at about $120,000 with income of nearly $2,000 a month) to Philpot and Kirtlan.

When Stauffer died in January, 1952, his heirs at law were

his sister Myra and nieces and nephews. A nominee of Myra applied for letters of administration, alleging that Stauffer had died intestate. Philpot offered the will for probate. The heirs contested the will before probate. The superior court found that the will was the product of undue influence of Philpot and Kirtlan except as to the specific devise to Snyder (which had been adeemed by sale of the devised property prior to Stauffer's death) and the $5,000 legacy to Littlefield, and denied probate except as to the latter legacy.

Philpot, Kirtlan, and Wollenberg appealed. (*Estate of Stauffer* (1956), *supra*, 142 Cal.App.2d 35; rehearing and hearing denied.) The District Court of Appeal (pp. 39-40 [1] of 142 Cal.App.2d) upheld the finding that Philpot and Kirtlan were guilty of undue influence. But it determined (pp. 41-42 [2] of 142 Cal.App.2d) that the residuary gifts to Snyder and Wollenberg were not affected by the undue influence. The appellate court pointed out (p. 36 of 142 Cal. App.2d) that the testator's surviving heirs had no communication with him for more than 15 years prior to his death and (p. 42 of 142 Cal.App.2d) that "the record is devoid of any evidence of love or affection between the testator and his relatives. In fact it was all to the contrary." Therefore, the appellate court said (p. 42 of 142 Cal.App.2d), the effect of the superior court's order "was to defeat any possibility of carrying out, except as to minor bequests, the testator's intention . . . since the judgment of the trial court excluded both Snyder and Wollenberg, the only two beneficiaries for whom he was shown to have expressed any affection, except Littlefield, and thereby gave substantially all of his estate [by intestate succession] to the very persons whose participation he emphatically did not want." The District Court of Appeal concluded (pp. 43-44 of 142 Cal.App.2d) that the business realty ineffectually devised to Philpot and Kirtlan passed under the residuary clause, one third to Snyder, one third to Wollenberg, and one third by intestate succession.

Pursuant to the remand of the District Court of Appeal, the superior court on September 24, 1956, rendered judgment that the will is denied probate except as to the $5,000 legacy to Littlefield and the residuary gifts to Wollenberg and Snyder; that as to the remainder of the residue Stauffer died intestate.

Meanwhile, in July, 1953, Crocker-Anglo National Bank had been appointed special administrator with general powers and had employed respondents as its attorneys. When Stauf-

fer died he had no property standing in his name. Respondents discovered improprieties of Philpot and Kirtlan in dealing with Stauffer, brought an action in which the administrator recovered the business realty which Stauffer had deeded to Philpot and Kirtlan in 1949 and judgment for proceeds of that property which Philpot and Kirtlan had appropriated, and successfully resisted Philpot's and Kirtlan's appeal from such judgment. (*Anglo Calif. Nat. Bank* v. *Philpot* (1957), 148 Cal.App.2d 469, 477-478 [1, 2] [306 P.2d 970]; rehearing and hearing denied.) The estate recovered by respondents was valued at more than $173,000 in September, 1957.

Over objection of Wollenberg the superior court then made the order from which the present appeal is taken. The court found that without respondents' extraordinary legal services to the special administrator there would be no property in the estate; that such services were performed "in connection with litigation taken for the common benefit of each of the heirs, legatees and beneficiaries of the estate"; that $32,500 is the reasonable value of the services and that respondents advanced $1,311.51 for necessary costs and expenses of such litigation. It ordered that the special administrator pay respondents such $32,500 and $1,311.51, and that "Said compensation and said costs and expenses are to be borne and shared proportionately by each of the heirs, legatees and beneficiaries of the estate of said decedent, herein, out of his or her respective share in said estate."

▮ Under the California law of wills, in the absence of testamentary provision controlling payment of claims against the estate, resort must be had first to property undisposed of by will for payment of such claims. (*Estate of Kelleher* (1928), 205 Cal. 757, 761 [3] [272 P. 1060]; *Estate of Hall* (1920), 183 Cal. 61, 62 [1] [190 P. 364]; *Estate of Traver* (1904), 145 Cal. 508, 510-511 [78 P. 1058].) "This is so for the reason that the law endeavors to carry out the intent of the testator as far as possible and, therefore, property not disposed of by the will should be so applied as to render it certain that the dispositions actually made by the testator will be effective." (*Estate of Hall* (1920), *supra*, p. 62 [1] of 183 Cal.) The Kelleher, Hall, and Traver cases point out that the foregoing rule and reason had statutory expression. ▮ The present relevant Probate Code provisions are substantially the same as the statutes referred to in those cases and there-

130

fore "must be construed as continuations thereof, and not as new enactments." (Prob. Code, § 2.)

Section 750 of the Probate Code provides, "If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts, the expenses of administration, or family allowance, they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient. *If insufficient, that portion of the estate not disposed of by the will, if any, must be appropriated for that purpose*; and if that is not sufficient, the property given to residuary legatees and devisees, and thereafter all other property devised and bequeathed is liable for the same, in proportion to the value or amount of the several devises and legacies, but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate." (Italics added.)

Under the italicized language (as under the substantially similar language of former Code Civ. Proc., § 1562) "The absence of all appropriation is clearly an insufficient one." (*Estate of Traver* (1904), *supra,* p. 511 of 145 Cal.)

The "obvious aim" of section 750 (like that of former Code Civ. Proc., §§ 1560, 1562, 1563, and Civ. Code, § 1359, from which section 750 is derived) is "to satisfy the charges against the estate with the least possible interference with the express dispositions of the testator." (*Estate of Hall* (1920), *supra,* p. 63 of 183 Cal.)

Where a will provides (as the will of Stauffer provides) that the residue is to be divided among beneficiaries who take as individuals, not as a class, and the disposition is ineffective as to one share of the residue, such share is property not disposed of by will. In that situation the estate property which will remain after satisfaction of general and specific gifts is divided into residuary shares and the debts and expenses of administration, including fees of the attorney for the personal representative, are first charged against the intestate share. (*Estate of Hall* (1920), *supra,* p. 64 of 183 Cal.; *Estate of Kelleher* (1928), *supra,* 205 Cal. 757, 761 [3], 763 [6].)

The fees for extraordinary services of an attorney for the personal representative which are allowable out of the estate (Prob. Code, § 910) include allowances for litigation in regard to estate property (see Prob. Code, § 901; *Estate of Feldman* (1947), 78 Cal.App.2d 778, 794 [5] [178 P.2d 498])

and allowance to an attorney for a special administrator (*Mc-Mahon* v. *State Bar* (1952), 39 Cal.2d 367, 372 [246 P. 2d 931]).

In the present case resort to the intestate share of the residue for payment of respondents' fees will achieve the testamentary intent of Stauffer as that intent has been determined in *Estate of Stauffer* (1956), *supra*, p. 42 of 142 Cal. App.2d; i.e., the testator intended that Snyder, Wollenberg, and Littlefield, for whom he had affection, should benefit by his will and he "emphatically did not want" substantial "participation" in his estate by his heirs, for whom he had no affection.

Respondents, however, urge that the order from which this appeal is taken properly applies the rule of *Estate of Reade* (1948), 31 Cal.2d 669, 671-672 [3] [191 P.2d 745], that "a plaintiff who has succeeded in protecting, preserving or increasing a fund for the benefit of himself and others may be awarded compensation from the fund for the services of his attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is equitable and just."

Reade died intestate leaving seven heirs. One heir employed her own attorney, successfully objected to the administratrix's account, and obtained for the estate a fund which the administratrix claimed individually. This court affirmed an order that the administratrix pay the fee of the objecting heir's attorney from such fund. We recognized (p. 671 [2] of 31 Cal.2d) that "Compensation for the services of an attorney must be paid by the person employing him, in the absence of a special agreement, special statutory provision, or exceptional circumstances"; we pointed out (pp. 671-672 [3] of 31 Cal. 2d) that equitable actions in which an attorney's fee was payable from a fund which the attorney recovered or protected for the benefit of his client and others were examples of such "exceptional circumstances"; and we concluded (p. 672 [4-5] of 31 Cal.2d) that the superior court in the exercise of its probate jurisdiction had properly applied the equitable rule.

Respondents also rely upon *Estate of Lundell* (1951), 107 Cal.App.2d 463, 464 [1] [237 P.2d 62], and *Estate of McDonald* (1954), 128 Cal.App.2d 719, 722 [4] [275 P.2d 917]. In each of those cases the entire estate passed by will; one of the beneficiaries of the will appeared in the probate proceedings by his own attorney and, by successful opposition to

the executor or the executor's attorneys, preserved or recovered estate property; and on the authority of *Estate of Reade* (1948), *supra,* 31 Cal.2d 669, the appellate court upheld an allowance from the estate for the successful beneficiary's counsel fees and costs.

The Reade, Lundell, and McDonald cases, upon their facts, are not controlling here. ▮▮▮▮ The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. (See *Estate of Reade* (1948), *supra,* pp. 671-672 [3] of 31 Cal.2d; *Winslow* v. *Harold G. Ferguson Corp.* (1944), 25 Cal.2d 274, 283-286 [8a-13] [153 P.2d 714]; Hornstein, *Counsel Fee Awards* (1956), 69 Harv.L.Rev. 658, 662.) All these considerations justify invoking equitable principles in situations such as those of the Reade, Lundell, and McDonald estates, where one beneficiary successfully undertook to protect the estate by opposing the position of the personal representative or the representative's attorneys. But where, as here, the attorneys who recover estate property are employed by the personal representative, there is no occasion to invoke these equitable considerations in order to make the attorneys' fee payable from the estate; by probate law the fee is so payable as an expense of administration. And no question of effecting testamentary intent or applying section 750 of the Probate Code was presented in the Reade, Lundell, or McDonald cases. Such questions could not arise in the case of Reade, who died intestate. The Lundell and McDonald opinions do not mention such questions or suggest that, to pay the allowance of attorney fees and costs, testamentary gifts were reduced in any manner different from that in which they would be abated to pay a debt or expense of administration under section 750.

The Reade case holds (p. 672 [4] of 31 Cal.2d) that the superior court has "power to apply equitable principles *in aid of its functions as a probate court.*" (Italics added.) It

does not suggest that the court has power to apply equitable principles in contravention of settled rules of probate law.

Respondents, however, urge that the following circumstances make it fair (and therefore, on respondents' view, lawful) to refuse application of section 750 of the Probate Code and to charge the subject expenses of administration ratably against every distributive share, testamentary gifts as well as intestate property, the general legacy as well as the residuary gifts: According to respondents, the heirs, by contesting the will, were "entirely responsible" for setting aside the invalid gifts to Philpot and Kirtlan so that the property purportedly given to them became available for distribution to the residuary beneficiaries of the will as well as to the heirs; also the heirs were "entirely responsible . . . for the suit which recaptured Mr. Stauffer's property"; yet if the award to respondents is paid from the intestate residuary share the heirs will inherit nothing because the amount of that award equals the value of one third of the tangible estate assets held by the special administrator. Furthermore, respondents say, they were attorneys for the heirs in the will contest and they are "incumbered with a morality which makes it impossible for them to accept" a fee for their services to the special administrator which would wipe out the recovery of the heirs.

The heirs were not "responsible" for the benefit to appellant Wollenberg (and to Littlefield and Snyder) which resulted from the judgment disposing of the will contest in the same sense that one who recovers or protects a common fund is "responsible" for the benefit which results to others equally entitled to share in such fund. The successful beneficiaries of the will did not stand idly by in the contest, awaiting the benefits of property which might come to them if the heirs' efforts prevailed. Rather, if the heirs had been able to maintain their position in the will contest the beneficiaries would have recovered nothing. But Littlefield and Wollenberg (whose efforts also benefited Snyder) each employed attorneys and successfully resisted in part the heirs' attack on the will. The benefit of the will contest to Wollenberg, Snyder, and Littlefield was only an incidental and unintended result of the heirs' partially successful contest. If any surcharge of the shares of the successful beneficiaries of the will had been sought for the services of respondents as attorneys for the heirs, the situation would appear to come within the following "view adopted by other jurisdictions" and by *Estate of Bullock* (1955), 133 Cal.App.2d 542, 547 [3] [284 P.2d 960]:

134

"[T]hat allowance of attorneys' fees for one party to be charged on the general fund where the other interested parties are represented by attorneys in the same litigation, will not be made. That such an allowance is justified only where the other parties have stood without counsel and would reap the benefits of the services rendered by the attorney conducting the proceedings. That where . . . the other interested parties all retain counsel, the equitable rule of paying from the general fund does not apply [citations]." (*Cf. Wallace* v. *Fiske* (1936, C.C.A. 8), 80 F.2d 897, 905, 907-909 [5-9] [107 A.L.R. 726], cert. den. 298 U.S. 675 [56 S.Ct. 940, 80 L.Ed. 1397]; *Buford* v. *Tobacco Growers' Co-op. Ass'n.* (1930, C.C.A. 4), 42 F.2d 791, 792 [1, 2].)

Elsewhere in their briefs, moreover, respondents correctly recognize that the attorney fees with which this appeal is concerned "have nothing to do with the will contest." Rather, as we have stated, the fees and expenses here apportioned are for the litigation conducted by respondents for the special administrator against Philpot and Kirtlan. Respondents appear mistaken in their assertion that the heirs "were entirely responsible . . . for the suit which recaptured Mr. Stauffer's property." The heirs, by instituting the pre-probate will contest, did create a situation in which it was necessary to appoint a special administrator with the powers and duties of a general administrator (Prob. Code, § 465), including the power and duty to recover estate property (*Lewis* v. *Beeks* (1948), 88 Cal.App.2d 511, 519 [3] [199 P.2d 413]). And the trial court found true allegations of respondents' petition for fees that their discovery of the property in the hands of Philpot and Kirtlan was based upon information supplied by the heirs and that the litigation against Philpot and Kirtlan "was initiated at the instance of the heirs." But it was the administrator, properly neutral as among the conflicting claims of the heirs and testamentary beneficiaries (see *Estate of Murphey* (1936), 7 Cal.2d 712, 716 [3] [62 P.2d 374]; *Estate of Higgins* (1910), 158 Cal. 355, 357-359 [111 P. 8]), which was responsible in law under its duty to take possession of estate property (Prob. Code, §§ 571, 581) for the litigation in which that property was recovered; the heirs' *incidental* encouragement of and information concerning the litigation are not equivalent to the efforts of a litigant who actually recovers property.

■ There was, of course, no impropriety in respondents' acting as attorneys for both the heirs and the special admin-

istrator, for the administrator had no interest in the success or failure of the will contest. (See *Estate of Healy* (1902), 137 Cal. 474, 478 [70 P. 455].) And the dual representation no doubt benefited the administrator, the successful legatees, and the heirs because it saved duplication of effort in investigating Philpot's and Kirtlan's dealings with Stauffer's property. But respondents' employment by the heirs is a fortuitous circumstance so far as the personal representative's administration of the estate is concerned; that relationship cannot justify an order which requires the administrator to abate testamentary gifts in a manner different from that specified in section 750 of the Probate Code and in violation of testamentary intent.

Respondents further contend that the ordered ratable apportionment of their fees can be supported by application of the provision of section 750 that "If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts, [or] the expenses of administration . . ., they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient." Respondents assert that Item 1 of the will directs that debts and expenses of administration are to be paid "first" and that (citing *Estate of Keller* (1955), 134 Cal.App.2d 232, 237 [6] [286 P.2d 889]) such a direction means that expenses of administration are to be paid out of the estate before any distributive shares, residuary or otherwise, are computed.

The Keller case is not applicable, for there the entire estate passed by will. Furthermore, no Item 1 of the will appears in the record before us; rather, such record shows that Item 1 was denied probate.[1]

---

[1]The judgment of March 1, 1956 (reversed in part by *Estate of Stauffer* (1956), *supra*, 142 Cal.App.2d 35, 44) denied probate of the will "as to the whole thereof, save and except Item 4 [legacy to Littlefield]." As we have stated, the judgment of September 24, 1956, entered pursuant to the remand of the District Court of Appeal, denies probate to the entire will except the legacy to Littlefield and the residuary clause as it pertains to Wollenberg and Snyder, and this judgment became final.

Thereafter on January 6, 1958, when the order here appealed from was made, the probate court found true all allegations of respondents' petition for extraordinary fees; such allegations include the following: "That one of the provisions of said will of Harry C. Stauffer which was admitted to probate provides that his debts are to be paid first." This finding is contrary to and cannot prevail over the final judgment of September 24, 1956.

After the making and entry (on January 6, 1958) of the order from which the present appeal is taken, the superior court on January 13,

Respondents urge, without citation of authority, that "Expenses connected with clearing title to a parcel of property may be paid out of probate income from that property. The administrator here should discharge all of the special expenses by way of attorneys fees in capturing the real property and its income out of the probate income from that real property." In the circumstances of the present case, this method of charging the expenses of recovering the business realty would have the same ultimate effect as charging such expenses against the general assets of the estate before the residuary shares are computed, rather than against the intestate share of the residue computed in accord with the rule of *Estate of Kelleher* (1928), *supra*, 205 Cal. 757, 761 [3], 763 [6], and *Estate of Hall* (1920), *supra*, 183 Cal. 61, 64. Thus a greater share of the estate would go to the heirs, "the very persons whose participation [the testator] emphatically did not want" (*Estate of Stauffer* (1956), *supra*, p. 42 of 142 Cal. App.2d).

For the reasons above stated, the order appealed from is reversed with directions to charge the fees for extraordinary services rendered by respondents, and the costs and expenses advanced by them, first against the intestate portion of the estate and to resort to other assets of the estate only if the intestate portion should be insufficient to satisfy such fees, costs and expenses.

Gibson, C. J., Traynor, J., Spence, J., McComb, J., and White, J., concurred.

PETERS, J.—I dissent.

The majority opinion reaches a shocking result. It holds that heirs who were solely responsible for bringing a fund into the decedent's estate receive nothing as a result of their

1958, made an order that the will be admitted to probate except for "items (2) [adeemed devise to Snyder], (3) [devise of business realty to Philpot and Kirtlan], (5) [$5.00 each to named relatives], (6) [possible annuity to sister], that part of (7) giving a share in the residue to R. N. Philpot, and (8) [naming Philpot executor] . . . Ordered entered name portions [sic; *nunc pro tunc*?] as of September 25, 1956." The order of January 13, 1958, does not explain the court's attempt to change the final judgment entered September 24, 1956, so as to admit Item 1 to probate, and respondents do not cite and we have not found any authority which would permit such a change. So far as the record before us discloses, the judgment of September 24, 1956, reflects the deliberate and correct judicial action of the judge who rendered it (and who was not the judge who made the order of January 13, 1958), and such final judgment is not subject to amendment. (See *Epley* v. *Califro* (1958), 49 Cal.2d 849, 854 [7] [232 P.2d 91].)

efforts. This inequitable result is reached even though there would have been no property in the estate to distribute to the named residuary legatees had the heirs failed to take the action the costs of which are now charged to them alone. This result is not compelled by the law and is contrary to elementary rules of fairness and justice.

The probate court specifically found: "[T]hat without said legal services there would be *no property, real or personal, in the estate of decedent*; that said services *created and preserved* for the estate of decedent *all* of the real and personal property that has come into the possession of said Special Administrator. . . .

"That said extraordinary legal services were performed in connection with litigation taken for the *common benefit of each* of the heirs, legatees and beneficiaries of the estate of decedent." (Emphasis added.)

These findings cannot be challenged. The majority concedes that it was the first will contest by the heirs which made possible the appointment of the special administrator, that the heirs instigated the appointment of said administrator, and that the successful litigation was undertaken as a result of information unearthed and supplied by the heirs. Yet the majority finds that the heirs were not responsible for the recovery of the property because they caused a special administrator to be appointed instead of personally prosecuting the action which returned to the estate property originally conveyed *inter vivos* by the testator (see *Anglo Calif. Nat. Bank* v. *Philpot,* 148 Cal.App.2d 469 [306 P.2d 970]). This is a completely unrealistic distinction.

The rules announced in *Estate of Reade,* 31 Cal.2d 669 [191 P.2d 745], and *Estate of Lundell,* 107 Cal.App.2d 463 [237 P.2d 62], are clearly applicable. These cases simply announce a rule of fairness and justice: "[One] who has succeeded in protecting, preserving or increasing a fund for the benefit of himself and others may be awarded compensation *from the fund* for the services of his attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is *equitable and just.* . . . The application of equitable principles *would seem to require* that the other heirs bear their proportionate share of the expense of the litigation." (Emphasis added; 31 Cal.2d at pp. 671-672.)

It is true that *Estate of Reade, supra,* is distinguishable on its facts from the instant case, because in the Reade case there

was no will involved, the decedent having died intestate. But there *was* a will involved in *Estate of Lundell, supra,* where the equitable principle enunciated in *Estate of Reade* was applied by the court without any discussion of section 750 or the order of allocation of expenses which would have been required had the section been applied. The theory of these cases—that the costs incurred in producing a fund which will inure to the benefit of many should be shared by all rather than shouldered by only one member of that group—is clearly applicable here. The heirs have produced a fund which will benefit the named legatees—without which, in fact, these named legatees would have taken nothing—and yet only the heirs are to be burdened with the costs of producing this fund. The result is that *they* will take nothing while the legatees will receive a windfall of over a hundred thousand dollars. The application of the equitable principles above discussed would seem to be clear.

Section 750 of the Probate Code sets forth the order in which costs are to be allocated if no particular fund has been designated by the testator. But the purpose of this section, as indicated by the majority, is "that the law endeavors to carry out the intent of the testator as far as possible. . . ." (*Ante,* p. 129.) This order of allocation should not be followed when it will *not* carry out the testator's intent. The majority finds justification for the literal application of section 750 in the evidence that the testator had no intent to benefit his heirs. If it be assumed that the testator would have preferred that his heirs take nothing had he known the size of the estate which would be distributed,[1] it cannot be said that the testator would have preferred that his heirs take nothing if, as a result, his named legatees would also have taken nothing. The only reasonable assumption is that the testator would have preferred

[1]It is not certain that the testator intended to exclude completely his heirs from participating in his estate. His will specifically bequeathed an annuity of fifty dollars a month to his sister, Myra S. Henry (one of the contesting heirs), if there was "sufficient revenue from the estate to warrant it." The first appellate court opinion (*Estate of Stauffer,* 142 Cal.App.2d 35 [297 P.2d 1029]) did not discuss this provision of the will, and the legacy was not probated. The failure of the appellate court to provide for participation by Myra can be attributed to the fact that the terms of the bequest were uncertain and the court assumed that Myra, as an heir, would share in the one-third of the residue which would pass by intestacy and so would inherit an amount at least equal to that which was bequeathed for her probable life expectancy.

The appellate court reversed the probate court's refusal to admit any of the will to probate since "substantially all" (142 Cal.App.2d at 42) of Stauffer's estate would have gone to his heirs, a result obviously contrary to his intentions. But it should not be concluded that the court

that his legatees take two-thirds of the now sizable residue even though his heirs would also benefit. In this particular case the legatees take the entire estate and the heirs are effectively disinherited. In future cases those who would take only from an intestate portion of an estate will be loath to put forth any effort to bring property into an estate if there is any likelihood that the costs will approximate the intestate share.

In this very case, where the majority finds that the presumed intent of the testator has been effectuated, it is evident that had the heirs known that they would take nothing from their efforts they would have done nothing. Thus the original will contest would not have taken place, the special administrator would never have been appointed and Philpot and Kirtlan, who were found to have acquired Stauffer's property, *inter vivos* and under the will, through undue influence (*Estate of Stauffer,* 142 Cal.App.2d 35 [297 P.2d 1029]; *Anglo Calif. Nat. Bank* v. *Philpot, supra*) would have retained the property so acquired *to the exclusion of the named legatees.* If, as the majority finds, Stauffer intended these legatees to take under his will this intent would have been totally frustrated if the heirs had failed to act. Had this decision been announced prior to Stauffer's death this would have been the result in this case. It will undoubtedly be the result in future cases.

The majority opinion sets forth three reasons that would permit surcharging of a common fund with the costs of recovering that fund: "fairness to the successful litigant, *who might otherwise receive no benefit* because his recovery might be consumed by the expenses; correlative *prevention of an unfair advantage* to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." (*Ante,* p. 132.) (Emphasis added.) The majority then concludes that these reasons are not important to this case because the attor-

---

intended that Myra should be totally excluded. The will itself repudiates such a conclusion. However uncertain "sufficient revenue . . . to warrant it" may be it would seem that an estate totalling one hundred seventy thousand dollars is "sufficient." The present decision thus negates an intent expressed on the face of the will since Myra is now excluded along with the other heirs.

neys' fees will, in any event, be paid. But the equally important principles of "fairness to the successful litigant" and "prevention of an unfair advantage to the others who are entitled to share in the fund" are disregarded. The result of complete nonparticipation in the fund by those responsible for creating it indicates the importance and fairness of these principles and their applicability to the present case.

It cannot be said, reasonably, that in this case the testator would have preferred that the residuary legatees take to the exclusion of his heirs. At the date of Stauffer's death the residuary legatees were not entitled to anything, there being no property in the residuary fund. Furthermore, a specific devise to Snyder, who was also a residuary legatee, was adeemed by sale prior to the testator's death. These facts suggest that at the date of his death the testator's desire to benefit these legatees was not particularly strong and that both the legatees and the heirs had been excluded by him, requiring that both groups be treated equally once a fund was made available.

The probate court properly apportioned the costs against the heirs *and* the residuary legatees. This method complied with the equitable principles laid down by the Reade decision and allocated the cost among all who benefited from the recovery of the property. The order of the probate court should, in my opinion, be affirmed.

Respondents' petition for a rehearing was denied December 30, 1959. Peters, J., was of the opinion that the petition should be granted.