[Civ. No. 34365. Second Dist., Div. Five. July 14, 1970.]

Estate of ELMA C. KORTHE, Deceased.
GENEVA CLIFTON et al., Petitioners and Respondents, v.
SECURITY FIRST NATIONAL BANK as Executor, etc., et al.,
Objectors and Appellants;
ELLENE MORRIS et al., Objectors and Respondents.

## Counsel

Wise, Kilpatrick & Clayton and George E. Wise for Objectors and Appellants.

Eric A. Rose for Petitioners and Respondents.

No appearance for Objectors and Respondents.

## Opinion

**KAUS, P. J.**—This is an appeal from an order directing Security Pacific National Bank,[1] as executor of the estate of Elma C. Korthe, to pay $20,000 in attorney's fees out of the assets of the entire estate to Eric A. Rose, attorney of record for five residuary legatees, based upon a finding that this was the reasonable value of services rendered in preservation of a common fund.

---

[1]The successor company to Security First National Bank.

### Facts

On July 2, 1963, decedent executed a will leaving her estate to 32 named beneficiaries and designating Security First National Bank (Security) as executor. On December 30, 1963, decedent executed a will which purported to revoke all earlier wills and which left the preponderance of her estate to Edwin and Marion Barrett, husband and wife. The December 30 will named Edwin Barrett executor.

Decedent died August 22, 1967, leaving an estate valued at approximately $140,000. On September 8, 1967, Security filed a petition seeking admission to probate of the July 2 will; the will was admitted to probate October 2, 1967; letters testamentary were issued to Security October 5, 1967.

On November 17, 1967, Barrett filed a petition seeking revocation of the July 2 will and of the letters testamentary, having filed a petition for admission to probate of the December 30 will on November 15, 1967. Grounds of opposition to probate of the December 30 will were filed by petitioners and respondents herein on December 6, 1967. Following a successful demurrer, amended grounds of opposition were filed by petitioners and respondents on January 15, 1968. Eventually all but eight of the beneficiaries named in the July 2 will joined in the will contest and were represented by various counsel.[2] All counsel undertook the representation of their respective clients on a contingent fee basis. The bases for the contest were allegations that Barrett, decedent's tax adviser and a former attorney, had taken advantage of his fiduciary relationship with decedent and obtained her signature to the December 30 will, which he himself prepared, by means of fraud and undue influence and at a time when she lacked testamentary capacity.

A settlement was reached among the parties to the will contest under the terms of which Barrett and his wife agreed to relinquish all claims against the estate for $5,000. All but two of the beneficiaries contributed to the settlement. A judgment was then entered denying probate to the December 30 will. Thereafter Mr. Rose petitioned the court for attorney's fees for services rendered in the will contest and the order presently appealed from issued.

█ Appellants do not contest the fact that Rose rendered the services

[2] Mr. Rose appeared alone for five beneficiaries and in association with Mr. Raycraft for an additional three; Mr. Gorham appeared for nine beneficiaries; Messrs. Peterson and Heimburger for another six; one beneficiary had predeceased the testatrix; and eight did not participate in the contest, but of these four were married to contestants and were cobeneficiaries of the same share of the estate with their respective spouses.

he claims to have rendered; nor do they dispute the fair value of those services. They concede that a court may award attorney's fees from a common fund to an attorney who has succeeded in preserving that fund when equity requires it. They argue correctly, however, that this cannot be done when there are multiple beneficiaries of the fund and all—or substantially all—are represented by various conusel.

■ "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." (*Estate of Stauffer,* 53 Cal.2d 124, 132 [346 P.2d 748].)

■ The rationale thus expressed by the Supreme Court applies only where a single beneficiary undertakes the risk and expense of litigation while the remaining beneficiaries sit on their hands. Where, as here, substantially all of the beneficiaries sought counsel and joined in the litigation no unfair advantage flows to the beneficiaries not represented by Mr. Rose by virtue of his services. Nor will the recovery of Mr. Rose's clients be consumed by the expense of litigation if they are made liable for their own attorney's fees since they had contingency fee arrangements with Rose limiting the amount of their liability to a fixed percentage of their recovery, as did the other beneficiaries with their attorneys. On the other hand, if the common fund is charged with payment of attorneys' fees assessed according to their reasonable value, there is a very real danger that the recovery of all of the beneficiaries will be consumed or sharply curtailed by such fees. In awarding Rose's fee the trial court made it clear that it was in no way precluding the awarding of like fees from the estate to the remaining counsel of record, should they choose to petition the court. If petitioners and respondents prevail on this appeal liability of the estate for attorneys' fees appears unlimited. The final ground cited by the court in *Stauffer,* encouragement of diligence by counsel, is likewise satisfied by contingency fee arrangements.

*Stauffer* itself recognizes, albeit in dictum, that the rationale for the rule allowing fees from the common fund disappears when different beneficiaries are represented by different counsel. "If any surcharge of the shares of the successful beneficiaries of the will had been sought for the services

of respondents as attorneys for the heirs, the situation would appear to come within the following 'view adopted by other jurisdictions' and by *Estate of Bullock* (1955) 133 Cal.App.2d 542, 547 [284 P.2d 960]: '[T]hat allowance of attorneys' fees for one party to be charged on the general fund where the other interested parties are represented by attorneys in the same litigation, will not be made. That such an allowance is justified only where the other parties have stood without counsel and would reap the benefits of the services rendered by the attorney conducting the proceedings. That where . . . the other interested parties all retain counsel, the equitable rule of paying from the general fund does not apply [citations].' (Cf. *Wallace* v. *Fiske* (1936, C.C.A. 8) 80 F.2d 897, 905, 907-909 [107 A.L.R. 726], cert. den. 298 U.S. 675 [56 S.Ct. 940, 80 L.Ed. 1397]; *Buford* v. *Tobacco Growers' Co-op. Assn.* (1930, C.C.A. 4) 42 F.2d 791, 792.)" (*Estate of Stauffer, supra,* 53 Cal.2d 124, 133-134.)

Petitioners and respondents dispute the applicability of *Bullock* on the ground that the court in *Bullock* made an express finding that the litigation there involved was pursued for the benefit of certain income beneficiaries and to the detriment of residuary beneficiaries. Here, they insist, Rose's efforts aided all beneficiaries alike.

A careful reading of *Bullock* will disclose that the attorney there rendered three distinct services: first, he objected to a petition by the executor to continue a certain business venture on behalf of the estate; second, he persuaded the court that certain tax liabilities were to be paid from the corpus of the estate, rather than out of income; and, finally, he examined the executor at length concerning his qualifications to be appointed trustee under the will of the testatrix.

The court's discussion in which it adopted the rule of other jurisdictions with respect to the allowance of attorneys' fees where other interested parties are represented by counsel, was clearly made with reference to the first type of service rendered. It follows immediately after the court's approval of the trial court's opinion that the services were of value to the estate. Only after adopting the rule does the court go on to discuss the obvious fact that in opposing the payment of taxes out of income, the attorney only benefited the income beneficiaries.[3]

We appreciate that the record here indicates—and it is not really disputed—that Mr. Rose did the lion's share of the work which led to the

---

[3]The court does not discuss the service rendered in examining the executor with respect to his qualifications as trustee. The record in *Bullock* shows that this was undertaken at least partly because of the court's own doubts as to such qualifications. Apparently the court's doubts were resolved, for the executor was appointed. No common fund was created or preserved by the service.

highly favorable settlement with Barrett. It may therefore seem inequitable that he should get more or less the same fee from his clients as the other counsel presumably will get from theirs.[4] That, however, is a situation in which attorneys find themselves many times and it is up to them to protect themselves by arrangements with other counsel. Take, for example, an attorney who represents one plaintiff out of many who make claims after a common disaster, such as the crash of a commercial airliner. He spends hundreds of hours preparing a highly complicated case and presents it successfully in a consolidated trial. Still, unless he has an agreement with other counsel, he must look to his own client for his fee.

This leaves, of course, four beneficiaries out of 31[5] who have reaped the fruits of Mr. Rose's and other counsels' efforts without risking liability for a professional fee.[6] We express no view whether under the law as it is or under any logical extension thereof, the attorneys who rendered services in this matter to their clients and incidentally benefited the noncontesting beneficiaries, can assert any rights directly against these nonclients.[7] We merely hold that they cannot do it by the route chosen here.

Respondents also point to the fact that Security, the executor, did not contest the Barrett will.[8] The assertion is then made that the executor was under a duty to defend the will under which he acted and that, had he done so, its attorney would have been entitled to extraordinary fees out of the estate. Respondents do not say, however, that there is anything in the record to suggest that had the executor contested the Barrett will, they would not have appeared with their own counsel, as they would have been entitled to do. (Prob. Code, §§ 370, 380.)

Just where this is supposed to lead us on this appeal is not clear. The law concerning an executor's duty—as distinguished from his privilege—to contest a later will is by no means as clear in any particular case as

[4]The exact terms of the contingency arrangements do not appear in the record.

[5]We ignore the husbands and wives of those who engaged counsel.

[6]For what it may be worth, we do note that out of the four, two would have received $1,000 each under the Barrett will. Their shares under the probated will amount to about $4,000. The other two are charities.

[7]As far as the beneficiaries represented by counsel were concerned, there probably were ways to effect a substantially similar statement without benefiting those who stayed on the sidelines. On the other hand, there perhaps would have been no way to avoid that the latter would benefit from the attorneys' efforts, had the contest been tried to a successful conclusion.

[8]Appellants state in their brief that in the contest the executor was represented by Messrs. Gorham, Wonder and Horn, by Mr. Gorham. No record reference is furnished. After considerable leafing through a clerk's transcript of over 400 pages we do not find any pleading or document relating to the Barrett will contest submitted on behalf of the executor until the stipulation which incorporated the settlement was filed in November 1968.

respondents suggest. (Compare *Estate of Pietro,* 177 Cal.App.2d 705 [2 Cal.Rptr. 512] with *Estate of Halsell,* 138 Cal.App.2d 680, 683 [292 P.2d 300]; see generally 20 Cal.Jur.2d, Executors and Administrators, § 225.) Nothing in the record points to any dereliction on the part of Security in not joining in the contest—that question never came up. On the contrary it appears from Mr. Rose's own declaration that he became interested in the matter at the instance of Mr. Gorham, the attorney for the executor who requested him to examine the file and stated that he would recommend Mr. Rose to interested legatees.[9] Under such circumstances it could be quite convincingly argued that had Mr. Gorham contested the Barrett will on behalf of the executor, he would have caused a wholly unnecessary expense to the estate.[10]

Finally respondents suggest that Security has no standing on this appeal. Apart from costs, the point is really rather academic, since the notice of appeal was signed on behalf of Security and six named beneficiaries. Some time ago respondents unsuccessfully moved to dismiss the appeal as far as Security was concerned, urging the same ground of asserted lack of standing. That ruling, however, is not law of the case. Right or wrong, Security then claimed that the court could not intelligently rule on the motion to dismiss without deciding the merits of the appeal. The denial of the motion therefore did not necessarily decide the question of standing. (Cf. *Pigeon Point Ranch, Inc.* v. *Perot,* 59 Cal.2d 227, 231 [28 Cal.Rptr. 865, 379 P.2d 321].) On the merits of the question, however, we are persuaded that the law as laid down in *Estate of Kessler,* 32 Cal.2d 367, 369-370 [196 P.2d 559], compels a holding to respondents' position.

The order appealed from is reversed.

Aiso, J., and Reppy, J., concurred.

The application of the petitioners and respondents for a hearing by the Supreme Court was denied September 10, 1970.

---

[9]"Shortly after the filing of the Petition to Probate Will, dated December 30, 1963, petioner [*sic*] was approached by Charles W. Gorham, attorney for the executor, SECURITY FIRST NATIONAL BANK, under a will, dated July 2, 1963, and admitted to probate, and it was suggested to declarant that because of declarant's experience and type of specialization, declarant might want to examine the file in the above-entitled estate, and that he would recommend interested legatees to contact the undersigned for that purpose . . ."

[10]As noted—see footnote 2, *ante*—Mr. Gorham did eventually file a contest on behalf of certain beneficiaries. There can be no suggestion—and there is none—that this involved any breach of faith on his part.