[Civ. No. 20268. Second Dist., Div. One. Nov. 16, 1954.]

Estate of CALLIE I. McDONALD, Deceased. LESTER McDONALD, Appellant, v. R. McDONALD, JR., Respondent.

Ben F. Gray and Stephens, Jones, LaFever & Smith for Appellant.

Baker, Palmer & Wall for Respondent.

DRAPEAU, J.—By her last will Callie I. McDonald left all of the residue of her estate, share alike, to her two surviving sons, Lester and Ronald McDonald. She appointed her son Lester executor without bond. Her will was handwritten, and dated in 1947. The residue comprised practically all of her estate, there being no specific bequests of any moment, and very little debt.

Callie's husband and her youngest son died before her. There was litigation in the husband's estate, because he deeded most of his property to his youngest son before he died. The result of this litigation was to vest the greater part of that estate in Callie as her community property.

Lester McDonald was a business man. He took·care of his mother's property from the time she got it until she died. There was always a close relationship of trust and confidence between Lester and his mother.

Ronald McDonald was an invalid. He had nothing to do with his mother's property. He was querulous and fault finding with her, and he definitely didn't share her trust in his brother Lester. But his mother was always solicitous of his welfare. She gave him the home where he lives. And she gave him for his support approximately one-third of the net income from her property. She gave another third of the income to Lester, and kept the remaining third for her own living expenses.

After Callie died in 1951 Ronald found out that in 1946 she had deeded to Lester two parcels of real property, leaving for herself only a business building in Bakersfield. One of the parcels deeded was a ranch in San Luis Obispo County. The other parcel was oil property in Kern County. The income from the oil property was a good part of Callie's total income.

The deed of the San Luis Obispo County property was recorded two years before Callie died. The deed of the Kern County property was recorded after she died. No monetary consideration was paid by Lester for the deeds. At the time they were made Callie signed typewritten statements to the effect that she made the deeds to Lester because of money paid out for her by him over a period of years, and for services rendered by him to her. It may fairly be inferred that Lester prepared these statements.

Notwithstanding the deeds, the income from these two parcels was included in the income divided among the mother and her two sons. And notwithstanding the deeds, taxes on these two properties were paid out of the total income.

When Lester as executor made his first account current, Ronald filed objections which put in issue the legal effect of these two deeds. He alleged that they were secured by undue influence by his brother's abuse of his confidential relationship with his mother, who was over 80 years of age, infirm,

with high blood pressure and poor eyesight, and living in a rest home.

Ronald also put in issue a claim of his brother's against the estate for a promissory note of $2,400, executed by the mother, and he alleged that Lester owed his mother $2,721.50.

These issues were determined by the superior court against Lester. He was ordered to inventory the two parcels of real property as assets of the probate estate; he was surcharged in his account for $2,721.50; his claim upon the promissory note was disallowed; and he was ordered to render and file a correct inventory and a correct accounting.

Motion for a new trial on these findings was heard and denied.

Lester appeals from these portions of the order, and from an allowance for Ronald's attorneys' fees and costs. He contends that the evidence is insufficient to support the findings and decision of the trial court; that the decision was the result of errors of law, and against law.

This presents the controlling question in the case: Does the evidence support the finding of undue influence?

If the deeds were secured by undue influence the $2,400 promissory note was without consideration, and Lester owed his mother $2,400 more. For this money came from a $4,800 bonus paid to Lester for an oil lease on the San Luis Obispo property.

(The only additional item is the balance of the surcharge of $321.50. This was the result of a sale of some of his mother's personal property by Lester. While he testified there was no balance due, the evidence supports this portion of the findings.)

When a parent without consideration conveys property to a child in a confidential relationship, to the exclusion of other children, the donee must show affirmatively that the transaction was fair and free from undue influence. And the presumption of undue influence is sufficient to sustain a finding to that effect. (*Solon* v. *Lichtenstein*, 39 Cal.2d 75 [244 P.2d 907].)

So in this case we have a presumption that supports the finding of undue influence, and in such circumstances that is the end of the appeal. While it is true that a finding to the contrary could have been made, that was the province of the trial court, not of this court, and the trial court's determination of the facts may not be disturbed on appeal.

There has been considerable discussion in the briefs of the fact that the trial judge filed two memoranda of decision. In the first one he said he would find for Lester. In the second one he said he had read the case of *Estate of Jamison*, 41 Cal.2d 1 [256 P.2d 984], and that on the authority of that case he would find for Ronald. It needs no citation of authority to support the proposition that it is the findings of the court which control on appeal, not memoranda of decision. The Jamison case well states the rules which the trial court was bound to apply to the facts in this case. Without repeating them, these rules applied to the facts determine the controversy here. And this is neither the first nor the last time when a trial judge after thinking over the facts in a case will make findings different from those he might have made upon his first impression.

 The order as to Ronald's attorneys' fees and costs appears to be well within the power of the court. (*Estate of Reade*, 31 Cal.2d 669 [191 P.2d 745].)

The order, and all of the portions of it appealed from, are, and each is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied December 6, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 12, 1955. Edmonds, J., was of the opinion that the petition should be granted.