[Civ. No. 9470.   Third Dist.   Apr. 3, 1959.]

Estate of HAZEL S. LAGERSEN, Deceased. CYRIL McDONALD, as Public Administrator, etc., Appellant, v. WILLIAM H. McPHERSON, as Administrator with the Will Annexed, etc., Respondent.

Everitt L. Mossman and Michael G. Ioakimedes for Appellant.

Henry C. Clausen and Richard G. Burns for Respondent.

VAN DYKE, P. J.—This is an appeal by the public administrator of the county of Solano, from that part of an order in probate which appointed respondent administrator with the will annexed of the estate of Hazel S. Lagersen, deceased. Said

decedent died May 28, 1957. On June 20, 1957, her will dated March 22, 1949, was filed for probate by the executor named therein, who later renounced the right to letters. On October 4, 1957, respondent herein filed a petition asking probate of said will and for the issuance to him of letters of administration with the will annexed. He therein alleged the renunciation of right to letters by the named executor and that he was the nominee of Victor R. Lagersen, the son of decedent who resided in Louisiana. On October 14, 1957, respondent filed an amended petition alleging that his nominor then resided in California. On June 7, 1957, appellant had filed a petition asking for letters of administration. On June 20, 1957, appellant had filed a petition for letters of administration with the will annexed with respect to the 1957 will, although he alleged that will was invalid. The matters came on for hearing and eventually decedent's 1949 will was admitted to probate and respondent was granted letters of administration with the will annexed. Decedent's son, Victor, appeared at the hearing as a witness and testified that he was a California resident. In narrative form, his testimony was as follows:

I was born in Oakland, California, and lived in California until 1941, when I went into the service. I maintained my residence in California until 1954. Since that time I have resumed my residence in California. I work out of Redondo Beach in California, in sales promotion for Redondo Title Company. At this point the trial court announced itself satisfied with proof of Victor's California residence. Counsel for appellant took the witness under cross-examination and the following occurred:

"Q. Mr. Lagersen, where do you reside presently? A. In Sherman Oaks, California. Q. And when did you come to California this last time? A. The 13th of October. Q. And why did you come to California, Mr. Lagersen? A. For the purpose of looking into the settlement of my mother's estate. Q. And who sent for you, Mr. Lagersen? A. I believe I came on my own. Q. Did you receive any request from anyone to come to California to administer your mother's estate? MR. CLAUSEN [Counsel for respondent]: Object to that, your Honor, as immaterial. THE COURT: The objection is sustained. Q. And before coming to California where did you reside, Mr. Lagersen? A. In Shreveport, Louisiana. Q. And when did you first reside there? A. In 1954. Q. And at that time what was your occupation, Mr. Lagersen? A. I was retired. Q. From what? A. United States Air Force. Q. And do you own

your own home back there, Mr. Lagersen? A. I do. . . . Q. And do you have a family, sir? A. Yes. THE COURT: (Interposing:) Now, look here, his answer isn't good on that—on that owning a home. That isn't your home, is it? Your home is in California. A. I own a piece of property. THE COURT: You own a piece of property, but under your testimony here just now that would be your home. Is that your home? A. Oh, no, it is not my home. Q. And when did you buy that home, Mr. Lagersen? MR. CLAUSEN: (Interposing:) Now, we object to that as assuming something not in evidence. THE COURT: The objection is sustained. It isn't consequential. It isn't a part of this issue at all. MR. IOAKIMEDES [Counsel for appellant] : Your Honor, I think it is very material. THE COURT: Look here, I am not going to argue with you at all. MR. IOAKIMEDES: All right, your Honor. THE COURT: Please. BY MR. IOAKIMEDES: Q. Do you have any children, Mr. Lagersen? A. I—— MR. CLAUSEN: (Interposing:) Object to that as immaterial. THE COURT: The objection is sustained. BY MR. IOAKIMEDES: Q. Where are your family at this time, Mr. Lagersen? THE COURT: He hasn't testified he has a family yet. MR. IOAKIMEDES: I believe he has, your Honor. BY MR. IOAKIMEDES: Q. You have a family, Mr. Lagersen? A. Yes. Q. What is that family, Mr. Lagersen? A. My wife, two boys and a girl. Q. And where is that family at the present time, Mr. Lagersen? A. In Shreveport, Louisiana. Q. All of them? A. Yes. Q. Have you put up your house for sale in Shreveport, Louisiana, Mr. Lagersen? MR. CLAUSEN: Object to that as immaterial. THE COURT: The objection is sustained. BY MR. IOAKIMEDES: Q. Where do you reside now, Mr. Lagersen? A. Sherman Oaks, 4152 Murietta. Q. Do you rent or do you own? MR. CLAUSEN: Object to that as immaterial. THE COURT: The objection is sustained. MR. IOAKIMEDES: Your Honor, I feel these are very material. THE COURT: Look here, I have ruled already. Go on with your next question. MR. IOAKIMEDES: If your Honor please, we are coming to a question of fact of whether this man is a resident or not, and I feel—— THE COURT: (Interposing:) I have ruled already, so go on with your next question. MR. IOAKIMEDES: (Continuing:) You must go into the matter of intent, your Honor, and we can—— THE COURT: (Interposing:) I don't care anything about an argument. You have got your legal rights, and do whatever you want to. BY MR. IOAKIMEDES: Q. And when did you go to Sherman Oaks, Mr. Lagersen? A. The 15th of October. THE COURT: Of this year? A. Yes. BY MR. IOAKIMEDES: Q. And when did you rent your

home there, Mr. Lagersen? Mr. Clausen: Object to that as immaterial, your Honor. The Court: Objection sustained. By Mr. Ioakimedes: Q. When did you establish your home down there, Mr. Lagerson? A. the 14th of October. Mr. Clausen: 1957, Mr. Lagersen? A. Yes. By Mr. Ioakimedes: Q. With whom do you reside down there? Mr. Clausen: Object to that as immaterial. The Court: The objection is sustained. By Mr. Ioakimedes: Q. And when did you get your job, Mr. Lagersen? A. The 14th of October, 1957. Q. And what job was that? A. Sales representative of the Redondo Title Company. Q. And is that the position you hold presently? A. Yes, it is. Q. You stated you resided in California before 1954, is that correct? A. That is correct. Q. And where were you at that time, prior to 1954? Mr. Clausen: Object to that as immaterial. The Court: The objection is sustained. By Mr. Ioakimedes: Q. Where was your last residence before leaving California in 1954? A. It was the family residence on Hanover Street in Santa Cruz, California. Q. The family residence. Which family? A. My family. Q. Name, please? A. Lagersen. Q. And was it your mother's and father's residence? A. That is right. Q. And did you reside there with your family, sir? A. I have. Q. And what was your occupation at that time? A. 1954, I was retired. Q. Prior to 1954? A. I was in the service. Q. And what service is that, sir? A. United States Air Force. Q. And what was your position? A. I was a pi- —— Mr. Clausen: It is immaterial. I object on that ground. The Court: The objection is sustained. By Mr. Ioakimedes: Q. And where was your last base prior to 1954, Mr. Lagersen? Mr. Clausen: Object to that as immaterial, your Honor. The Court: The objection is sustained. By Mr. Ioakimedes: Q. When you came to California on October 13th, how did you come? Mr. Clausen: Object to that as immaterial. The Court: The objection is sustained. By Mr. Ioakimedes: Q. And what did you bring with you, Mr. Lagersen, when you came to California? Mr. Clausen: Object to that as immaterial. The Court: The objection is sustained. By Mr. Ioakimedes: Q. Did you bring any furniture, Mr. Lagersen? Mr. Clausen: Object to that as immaterial. The Court: The objection is sustained. By Mr. Ioakimedes: Q. Have you transferred your bank account from Louisiana to California, Mr. Lagersen? A. I have a bank account in Southern California. Q. Do you have a bank account in Louisiana, Mr. Lagersen? A. I do. Q. Have you closed out that account? Mr. Clausen: Object to that as immaterial. The

COURT: The objection is sustained. BY MR. IOAKIMEDES: Q. What have you informed your neighbors and friends in Louisiana, Mr. Lagersen, about your trip to California? MR. CLAUSEN: Object to that as immaterial. THE COURT: The objection is sustained. BY MR. IOAKIMEDES: Q. Have you made plans for moving your family to California, Mr. Lagersen? MR. CLAUSEN: Object to that as immaterial. THE COURT: The objection is sustained. BY MR. IOAKIMEDES: Q. Have you attempted to move your furniture to California, Mr. Lagersen? MR. CLAUSEN: The same objection. THE COURT: The objection is sustained. BY MR. IOAKIMEDES: Q. Do you plan on remaining in California, Mr. Lagersen? A. It is my intent to remain in California. Q. And for how long, Mr. Lagersen? MR. CLAUSEN: Object to that as immaterial. THE COURT: The objection is sustained.''

Appellant's contentions here are as follows: 1. The record does not contain sufficient evidence to support the trial court's finding that Victor R. Lagersen was a resident of the State of California. 2. The court committed prejudicial error in limiting the cross-examination of Lagersen by counsel for appellant. 3. The court was guilty of prejudicial misconduct toward appellant.

■ The record discloses substantial support for the challenged finding. Lagersen testified that he came to California on the 13th of October, for the purpose of looking after the affairs of his mother's estate, but with the intent to resume residence in California; that he obtained employment here on the 14th and was still employed; that he had a place of residence in California; that he intended to continue to reside in California. The foregoing constitutes ample support for the findings made by the trial court. In 17A American Jurisprudence, Domicil, section 18, page 209, it is stated:

''The universal view is that the acquisition of a domicil by choice has the essential elements of physical or bodily presence in the locality involved and the intent to abandon the old domicil and adopt another in the new location. These elements must concur if a new domicil is established. In other words, there must be a concurrence of the fact and the intent, the factum and the animus.''

While it must be said that the testimony of Lagersen did not establish residence in California as a matter of law, we hold it to have been sufficient to support the finding of fact which the court made.

■ We think there can be no question but that it appears

from this record the trial court improperly restrained and confined the cross-examination of Mr. Lagersen by counsel for appellant. As stated in 5 Wigmore on Evidence, section 1367, pages 28 and 29, and section 1368, page 33:

"For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience.

". . . . . . . . . . . . .

"That the process of cross examination is invaluable, the lawyer well knows. But *why* is it invaluable? Just what does it do, and how? What is the theory of its efficiency?

". . . . . . . . . . . . .

". . . The fundamental feature is that a witness on his direct examination discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of testimony, as known to the witness, and (b) the facts which diminish the personal trustworthiness of the witness.

"(a) The *remaining and qualifying circumstances of the subject of testimony* will probably remain suppressed or undisclosed, not merely because the witness frequently is a partisan, but also and chiefly because his testimony is commonly given only by way of answers to specific interrogatories . . ., and the counsel producing him will usually ask for nothing but the facts favorable to his party. If nothing more were done to unveil all the facts known to this witness, his testimony (for all that we could surmise) might present half-truths only. Someone must probe for the possible (and usual) remainder. The best person to do this is the one most vitally interested, namely, the opponent."

The practical applicability of the wisdom of Wigmore is well illustrated by the record here. Until Lagersen came to California on October 13th he was admittedly a resident of Louisiana and had been for several years. There he had his home and his family. He arrived in California on October 13th alone, and on the next day executed a nomination in favor of respondent, in which he asserted that he was a resident of

California. On that day he obtained employment of a sort and between that day and the day of the hearing two weeks later he obtained at least lodgings which he declared to be his new home. His direct examination was both sketchy and brief, and consisted mainly of questions that called for a favorable answer. For example: ''Q. And then have you since that time resumed your bona fide and official residence in California? A. I have. Q. And at the present time are you a resident of California? A. I am. Q. And where are you working, Mr. Lagersen? A. I work out of Redondo Beach. Q. In California? A. Yes. Q. And what type of work do you do? A. Sales promotion for Redondo Title Company. Q. And have you since you resumed your residence in California most recently been conducting business in California? A. I have.'' This was the bare minimum of proof and fully justified the efforts of opposing counsel to apply the probe and the test of cross-examination concerning the value of this sketchy testimony as to domicile. Lagersen admitted that when he came to California on the 13th of October his purpose had been to look into the settlement of his mother's estate. When asked who sent for him, his answer was equivocal. He said he believed he came on his own. When asked if he received any request from anyone, objection was sustained on the ground of immateriality. Clearly, the question was material and ought to have been answered. When asked if he owned a home in Louisiana, he said that he did, but under suggestion by the court he retracted this and said that he owned a piece of property and it was not his home. The length of time he had owned this property and resided in it was material, but objection was sustained. When asked if he had put up his house for sale, objection was sustained, and the ruling was error, for as has often been said the direct testimony of intention and present but recently acquired residence is of little value compared to the surrounding circumstances. As said in 17A American Jurisprudence, Domicil, section 97, page 266:

Professor Beale has observed that 'since actions speak louder than words the conduct of a person is the most important evidence of his intention to acquire a domicil in a place.' Where, therefore, the declarations of a party as to his intent are inconsistent with his acts, his conduct is of greater evidential value than his declarations. Declarations as to an intention to acquire a domicil are of slight weight when they conflict with the facts.''

It was material to determine whether he rented or owned

the property which he was claiming as his new abode, but questions to elicit that information were ruled out. A question as to when he rented his home in California was ruled out, although he had said he established his new home on the 14th of October, the day he arrived and signed respondent's nomination. Questions as to whom he resided with were ruled out. Questions as to the mode by which he came to California on the 13th of October were ruled out, as were questions of what he brought with him, whether he had closed his bank account in Louisiana, whether he had informed his neighbors and friends of his trip to California, whether he had made plans for moving his family to California and whether he had moved, or attempted to move furniture to California, and as to how long he intended to remain in California.

Closely related to the contention of error in the practical denial of the right of cross-examination are appellant's contentions that the court was guilty of misconduct in connection therewith. Reference is made to such matters as the following: When the witness was asked whether he owned or rented his new abode and objection was sustained, counsel's attempt to discuss the matter with the court met with the statement "I have ruled already, so go on with your next question." And when counsel then once more attempted to discuss the matter, the court replied: "I don't care anything about an argument. You have got your legal rights, and do whatever you want to." We do not think that the incidents indicate prejudice, but rather a firm belief on the part of the court that Mr. Lagersen had not only the right to come to California and establish a residence, but that he had done whatever was necessary to do so.

The error in the practical denial of the right of cross-examination was, however, a serious error and one that is manifest on the face of the record.

The only remaining question is whether or not the order appealed from should be reversed. To resolve that question something more must be said than has thus far appeared. The record discloses that Mrs. Lagersen had left two documents purporting to be wills, the one admitted to probate and which was executed in 1949, and a will executed April 6, 1957, which was holographic in character. Under it she gave all her estate to "Free and Accepted Masons to care for me until I pass on and thereafter." By the earlier will she devised property to a number of people and organizations, including the Scottish Rite Consistory of San Jose, The First

Church of Christ, Scientist, in Boston, and The Regents of the University of California. Special letters with general powers had been issued. Conflicting interests had been adjusted by compromise of interested parties. A will contest had been disposed of. Apparently, the only result of a reversal would be the appointment of appellant to take charge of an estate, the probate of which had in one way or another been to all intents and purposes completed, leaving little except the matter of fees in issue. Probably a reversal would only mean another order granting letters to respondent. Under the constitutional admonition, we cannot reverse for error in procedure unless to refuse to do so would constitute a miscarriage of justice. We are persuaded from the whole record that this is not a case for reversal even though the errors we have found in the record are of grave import.

The order appealed from is affirmed.

Peek, J., and Schottky, J., concurred.