[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 790 
This is an appeal by William H. McPherson, the special administrator and administrator with the will annexed, from an order of the probate court partially granting his petition for allowance of extraordinary fees to himself as special administrator and administrator with the will annexed, and extraordinary fees to Henry C. Clausen, the attorney for the special administrator and administrator with the will annexed. The major contention on appeal is that the trial court abused its discretion in failing to grant adequate extraordinary compensation to the appellant and his counsel for their services.
We turn first to respondents' contention that the appeal from the portion of the order relating to the extraordinary fees for the attorney of the special administrator and administrator with the will annexed should be dismissed because the appellant is not an "aggrieved party" to that portion of the order. Section 1240
of the Probate Code expressly provides that an appeal may be taken from an order directing or allowing the payment of an attorney's fee or refusing to make any such order. [1] However, only aggrieved parties may appeal (Prob. Code, § 1233; Code Civ. Proc., § 938). [2] The attorney for the representative of an estate has a standing to sue for his fees and to appeal from an order denying them in whole or in part (Estate of Merrill,29 Cal.2d 520-523 [175 P.2d 819]; Prob. Code, § 911), but the only case where an attorney may proceed independently and maintain an action or an appeal is for services rendered during administration of the estate (Stafford v. Superior Court,1 Cal.2d 321 [34 P.2d 998]; Prob. Code, § 911; Estate of Pailhe,114 Cal.App.2d 658 [251 P.2d 76]). [3] An attorney who contributes to the creation or prevention of a common fund has a standing to appeal from an order denying him an award or compensation (Estate of Bullock, 133 Cal.App.2d 542
[284 P.2d 960]). [4] An executor or administrator can appeal from an order directing the payment of attorney fees if the payment will diminish the assets of the estate which it is his duty to protect against unwarranted claims (Estate of Kessler, *Page 792 32 Cal.2d 367 [196 P.2d 559]), although he is no longer personally liable for attorney fees (Houghton v. Coberly,201 Cal.App.2d 820, 823-824 [20 Cal.Rptr. 489]; Zagoren v.Superior Court, 117 Cal.App. 548, 551 [4 P.2d 279]; Estate ofKelleher, 205 Cal. 757 [272 P. 1060]). The precise question here presented, although noted soon after the 1905 and 1909 amendments to sections 1616 and 1619 of the Code of Civil Procedure, the predecessors of sections 904, 910 and 911 of the Probate Code, has not been decided (Estate of Murphy,171 Cal. 697, 701 [154 P. 839]). In the instant case, the alleged inadequacy of the extraordinary fees to the attorney for the administrator would appear to be beneficial to the estate, rather than detrimental, but at the same time embarrassing to the due administration of the estate (Estate of Colton, 164 Cal. 1, 5 [127 P. 643]). Furthermore, some of the services for which extraordinary compensation is sought, preceded the appointment of the administrator and Mr. Clausen as his attorney. We do not, however, need to decide the question.
[5] The record indicates that the respondents have raised this matter for the first time on appeal and did not object to the issue below or to the appellant's extensive testimony relating to the extraordinary services performed by Mr. Clausen. We also note that the notice of appeal was signed by Mr. Clausen on behalf of the appellant. In view of these circumstances, and our policy of hearing all appeals on their merits, we hold that the respondents have waived any objections to appellant's appeal from the portion of the order relating to the extraordinary fees granted to Mr. Clausen.
We turn now to a brief summary of the events leading to this litigation. The decedent, Hazel S. Lagersen, died on May 28, 1957, leaving two documents purporting to be valid wills, one executed in 1949, the other in 1957. For a period of about 10 years before her death, the decedent suffered from severe mental disorders and had been a patient in several institutions. The 1949 document left $1,000 to her son, Victor Lagersen, with the bulk of the estate going to the residuary legatees, the Scottish Rite Consistory of San Jose, and the respondents, The Regents of the University of California, and The First Church of Christ, Scientist, in Boston. The 1957 document, which was holographic in character, completely omitted Victor Lagersen and named as sole legatee the Grand Lodge of Free and Accepted Masons.
Thus, after the death of Mrs. Lagersen, the following parties attempted to represent her estate and establish rights to her *Page 793 
property: (1) the Grand Lodge of Free and Accepted Masons, then represented by Henry C. Clausen, filed a petition for the probate of the 1957 will; (2) the respondents, The Regents of the University of California, and The First Church of Christ, Scientist, in Boston, filed objections to the probate of the 1957 will and offered the 1949 will, which named them as residuary legatees; (3) the public administrator of Solano County filed a petition for letters, alleging the intestacy of the decedent; (4) appellant, William McPherson, the decedent's attorney and the personal representative of the estate of her predeceased husband, representing the Grand Lodge of Free and Accepted Masons and the Crocker-Anglo National Bank, which was named as executor of the 1949 document, filed petitions for appointment as special administrator and administrator with the will annexed; (5) Victor Lagersen, the son of the decedent, was then a resident of Louisiana, and through Carl B. Fountain, filed a petition for letters of administration, alleging intestacy, and threatened to contest the probate of both the 1949 and the 1957 wills. All of these petitions were individually set for hearing by counsel for the interested parties and finally after a series of conferences and settlement talks between the various parties and their attorneys, a meeting was held on September 9, 1957, at which all the claimants were represented by their counsel and a compromise agreement was approved in order to avoid the complex litigation raised by the many claimants to the estate, and to create a tax saving. During these negotiations, appellant served as the attorney for Victor Lagersen.
Under the terms of the compromise, Victor Lagersen and the respondent, The Regents of the University of California, were each to receive one-third of the estate; the respondent, The First Church of Christ, Scientist, in Boston, and the Grand Lodge of Free and Accepted Masons, and the Scottish Rite Consistory of San Jose, were each to receive one-ninth of the estate, the division to all parties to be made after payment of all taxes and other expenses. The compromise plan required a successful contest to the 1957 document, admission of the 1949 document to probate, resistance of the public administrator's petition, renunciation of its executorship by the Crocker-Anglo National Bank, as well as the establishment of Victor Lagersen's residence in California, so he could request the appointment of the appellant as special administrator, as the appellant was familiar with the personal affairs of the decedent and was a resident of the county of probate. *Page 794 
The compromise was effected on October 28, 1957, the 1949 will was admitted to probate, and appellant appointed as special administrator with the will annexed; the public administrator's appeal was successfully opposed (Estate of Lagersen, 169 Cal.App.2d 359
[337 P.2d 102]), and after additional litigation relating to the proper court to hear the appellant's first and final account (University of California v. Superior Court,185 Cal.App.2d 806 [8 Cal.Rptr. 629]), on January 21, 1960, appellant filed his second and final account, requesting compensation for his extraordinary services in the amount of $10,000 and requesting extraordinary compensation for his attorney in the amount of $10,000. Respondents filed their objections. After several days of hearings on the matter, the probate court entered its order granting extraordinary fees as follows:
"ITEM WILLIAM H. McPHERSON HENRY C. CLAUSEN Administrator Attorney --------------------------------------------------------------- Sale of real property $125.00 $ 100.00 Sale of Stocks $250.00 $ 250.00 All tax work $500.00 $1,000.00 _____________ _______________ $875.00 $1,350.00 "
As the court denied appellant's petition as to all other matters, this appeal ensued.
The only question presented by this appeal is whether the trial court abused its discretion in allowing the appellant and his attorney inadequate extraordinary fees. [6a] The allowance of extraordinary fees rests in the sound discretion of the trial court whose ruling will not be disturbed on appeal in the absence of a manifest showing of abuse (Estate of McLaughlin, 43 Cal.2d 462, 468 [274 P.2d 868]).
[7] Appellant first argues that the trial court erred in failing to allow him and his attorney extraordinary fees for their work in effecting the compromise agreement. As to the appellant, as indicated above, during the negotiations, he acted as the attorney for Victor Lagersen, who, as a result of the settlement, received about $70,000. It would appear to us that for this phase of his activities, appellant should look to Victor for compensation.
[8] Appellant and Mr. Clausen, at the hearing, testified that all of the work of the compromise was done by Mr. Clausen's office and that all of the parties at the final meeting of September 9, 1957, assumed that the fees would be paid out of the estate. The respondents' witnesses, however, testified *Page 795 
that there was no understanding as to a compensation for the services rendered; that Mr. Burns of Mr. Clausen's office, volunteered his services in drafting the settlement agreement, as he had just completed work on a similar problem and that the attorneys for all the parties participated in the working out of the settlement agreement and the various tax problems for the benefit of all the parties concerned. During the negotiations, Henry C. Clausen was acting on behalf of the Grand Lodge of Free and Accepted Masons, the sole beneficiary under the 1957 document. It appears to us that Mr. Clausen should look to this client for compensation.
Appellant next contends that his attorney is entitled to additional extraordinary fees on equitable grounds as an agreement to pay the reasonable value of their services should be implied from the compromise agreement. Appellant cites Estate ofHarvey, 103 Cal.App.2d 192 [229 P.2d 68], which held that a compromise agreement worked out by the counsel for the executrix during the probate, was the proper subject for extraordinary fees. [9] Appellant's argument overlooks the fact that an attorney's work prior to the probate is not compensable (Estateof Tubbs, 82 Cal.App.2d 305 [186 P.2d 7]).
Appellant next contends that without the considerable efforts of Mr. Clausen, there would have been no special fund for the benefit of all the parties, relying on the rule of Estate ofReade, 31 Cal.2d 669 [191 P.2d 745], Estate of Lundell,107 Cal.App.2d 463 [237 P.2d 62], and Estate of McDonald, 128 Cal.App.2d 719
[275 P.2d 917]. [10] This rule was recently discussed by the Supreme Court in Estate of Stauffer, 53 Cal.2d 124 [346 P.2d 748] at p. 132, as follows: "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. (See Estate of Reade (1948),supra, pp. 671-672 [3] of 31 Cal.2d; Winslow v. Harold G.Ferguson Corp. (1944) 25 Cal.2d 274, *Page 796 
283-286 [8a-13] [153 P.2d 714]; Hornstein, Counsel Fee Awards
(1956) 69 Harv. L.Rev. 658, 662). All these considerations justify invoking equitable principles in situations such as those of the Reade, Lundell, and McDonald estates, where one beneficiary successfully undertook to protect the estate by opposing the position of the personal representative or the representative's attorneys. [11] But where, as here, the attorneys who recover estate property are employed by the personal representative, there is no occasion to invoke these equitable considerations in order to make the attorneys' fee payable from the estate; by probate law the fee is so payable as an expense of administration."
The Supreme Court then concluded that the order appealed from had to be reversed and directed that the fees for the extraordinary services rendered were to be charged first against the intestate portion of the estate and then the remaining assets of the estate. Appellant relies on the Stauffer case. We note, however, that the primary question in the Stauffer case was not whether the extraordinary services existed and were properly compensated, as in the instant case, but simply as to how the expense thereof was to be borne. In the instant case, there was conflicting evidence as to the nature and extent and value of the extraordinary services performed. There is no question that the evidence amply supports the conclusions of the trial court that the appellant and his attorney were not entitled to any extraordinary fees for the work on the compromise agreement.
Furthermore, the instant case does not present a proper situation for the application of the equitable principle relied on by the appellant (Estate of Swanson, 171 Cal.App.2d 437
[340 P.2d 695]). [12] Where the other interested parties all retained counsel, the equitable rule of paying from the general fund does not apply. An allowance of attorneys' fees for one party to be charged on the general fund is justified only where the other parties have stood without counsel and would reap the benefits of the services rendered by the attorney conducting the proceedings (Estate of Bullock, 133 Cal.App.2d 542, 547 [284 P.2d 960]).
[13] Appellant next contends that the trial court's award of extraordinary fees for the sale of real property and stocks was so grossly inadequate as to constitute an abuse of discretion. The record reveals that the only one parcel of real property involved was a beach cottage in Santa Cruz. This property was sold with the assistance of a licensed real estate *Page 797 
broker who received a commission. As to the securities, the accounting indicates that these were sold at a loss of over $2,000 because of market conditions. The lower court apparently concluded that the petitions for authority to sell the securities, appearances, and other activities were pro forma matters, and allowed $250 each to the appellant and Mr. Clausen.
[14] Appellant next complains of the "gross inadequacy" of the compensation for all tax work done. The record indicates that the tax returns were prepared by a firm of accountants who were paid about $2,000 for their services; that the amounts of federal, estate and state inheritance tax were relatively small. Respondents' witness, an attorney for the state inheritance tax office, testified that in his opinion an allowance of $1,000 for the attorney and $500 for the accountants for all the tax work was reasonable.
Appellant also contends that the total amount of extraordinary fees allowed to him and Mr. Clausen was inadequate. Appellant relies chiefly on the testimony of his witness, Judge Greenwood, who had heard one of the prior matters in the case, and who testified that based upon his experience with the customary fees in the probate court of Solano County and his familiarity with the particular estate, the reasonable value of the extraordinary fees rendered by the appellant was about $5,500 and that of appellant's attorney, an additional $6,500. We note furthermore that the total amount of estate principal and income accounted for was $244,651.53. The ordinary commissions allowable under section 901 of the Probate Code to the administrator would total a little over $5,000 with a like amount to Mr. Clausen for his ordinary services during the course of administration (Prob. Code, § 910). As indicated above, appellant's petition sought extraordinary fees in the amount of $10,000 for his services as administrator and another $10,000 for Henry C. Clausen, more than twice the statutory fees for ordinary services. At the hearing, however, appellant indicated he was seeking only $6,500 for his services and $7,250 for Mr. Clausen.
[6b] As we indicated above, it is axiomatic that the allowance of extraordinary fees is in the discretion of the trial court and will not be disturbed on appeal unless such discretion has been abused (Estate of Guerin, 194 Cal.App.2d 566
[15 Cal.Rptr. 512]). [15] The record indicates that the trial court properly took into consideration the value of the estate, the time occupied, the nature of the services and their necessity. *Page 798 
It is important that attorneys be compensated justly for benefits they obtain and at the same time, it is important that they are not overpaid. [16] To constitute reversible error, an allowance for extraordinary services must be on its face so far out of proportion to the value thereof as to constitute an abuse of judicial discretion (Estate of Windiate, 197 Cal.App.2d 560, 566 [17 Cal.Rptr. 297].) We cannot hold that such discretion was here abused.
[17] Appellant's final contention on appeal is that the trial court erred in failing to rule on certain matters within the scope of appellant's petition and failed to rule on the respondents' objections to specific items within the account. The record indicates that the trial court proposed that the supplementary and final account not be submitted until the court made its order in regard to the extraordinary fees and that no objections were raised.
Order affirmed.
Shoemaker, J., and Agee, J., concurred.
A petition for a rehearing was denied January 2, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1963. *Page 799