Filed 11/20/23  Russo v. Dinneen CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TONINO RUSSO, Plaintiff and Appellant, v. PATRICK DINNEEN et al., Defendants and Respondents. | D081232 (Super. Ct. No. 37-2020-00000675-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Law Office of Vincent P. Sorrentino and Vincent P. Sorrentino for Plaintiff and Appellant.

Law Offices of Rodney L. Donohoo, Rodney L. Donohoo and Kevin T. Rhine, for Defendants and Respondents.

Tonino Russo sued Patrick and Mieko Dinneen for alleged breach of written contract and breach of oral contract.  After a bench trial, the court ruled against Russo on all claims.  Based in part on uncontradicted expert testimony that the Dinneens' signatures were copied and pasted from another document, the trial court found that Russo "more likely than not"

forged the written contract. As a result, the trial court disbelieved Russo's claim of any oral contract, which in any event was time-barred by the statute of limitations.

Russo seeks reversal based on what he argues was judicial bias and errors during the Dinneens' testimony when the trial court excluded certain impeachment evidence and limited the length of Patrick's examination. The examples of alleged bias do not amount to the " 'extreme facts' " showing a "probability of actual bias" required to find a due process violation. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 588-589 (*Schmidt*).) As for the Dinneens' testimony, we conclude that no prejudice resulted from the trial court's rulings because Russo cannot show that he would have fared any better absent the alleged errors. Therefore, we affirm.

## I.

This dispute arises out of work that Russo performed on a condominium unit purchased and later sold by the Dinneens.

At a bench trial, following Russo's case-in-chief, the court granted the Dinneens' motion for judgment on all causes of action except two contract claims. Russo claimed the Dinneens breached a written contract and an oral contract to pay him half the sale proceeds from the unit in exchange for his unlicensed contracting work.

## A.

When the Dinneens testified in their defense on those claims, Russo's counsel sought to damage their credibility.

Russo's counsel tried to undercut Mieko's testimony about the Dinneens' past financial assistance, which explained why Russo helped renovate the Dinneens' unit without compensation. Mieko testified that Russo, who is the father of three of her grandchildren, lived in properties

2

owned by the Dinneens for six years without paying rent. In addition, Mieko estimated that she gave Russo and his family "[h]undreds of thousands" of dollars in financial support. That support included paying for certain expenses for a restaurant that Russo operated with the Dinneens' daughter. During cross-examination, Russo's counsel tried to introduce "a transcript of an inquiry by an insurance carrier" that he argued was a "prior inconsistent statement" by Mieko about what funds she contributed to the restaurant. The trial court excluded the transcript because Mieko was not represented by counsel during that insurance inquiry. When Russo's counsel attempted to bring up the insurance inquiry a second time, the trial court excluded it under Evidence Code section 352 as an irrelevant collateral matter.

When Patrick testified, the trial court limited the examination time because of Patrick's age and physical condition. At the outset, the trial court (1) observed that Patrick, who was in his mid-seventies, had "a tremor"; (2) asked if it was a "benign familial tremor or Parkinson's or what"; and (3) commented that "[m]y wife has a benign familial essential tremor. It looks like what you have." At various times during cross-examination, the trial court warned Russo's counsel of his dwindling time to finish examining Patrick. With five minutes remaining, the trial court explained that it was "not going to have [Russo's counsel] bring back this elderly gentleman, who is clearly in my judgment getting tired." When Russo's counsel objected to "the cutoff of the cross," the trial court explained that it "exercise[d its] discretion with an elderly, infirm witness late in the day." In total, counsel for each side spent roughly the same amount of time examining Patrick.

Russo's counsel also challenged Patrick's credibility during cross-examination, but the trial court disallowed some impeachment efforts. Two examples are relevant here. First, when Patrick testified that he never

moved into the at-issue unit despite originally planning to reside there, Russo's counsel sought to question Patrick about claiming the unit as a residence for tax purposes. The trial court sustained the Dinneens' objections to these questions, explaining that they dealt with a "collateral matter" "not germane to anything I need to decide." Second, Russo's counsel wanted to question Patrick about unrelated business dealings that he allegedly hid from his wife, Mieko. The trial court sustained the Dinneens' objection under Evidence Code section 352 because the topic unduly consumed time and was "of minimal relevance." The next day, when Russo's counsel objected for the record, the trial court confirmed its ruling under section 352 and opined that it was not "appropriate" for Russo's counsel "to try to drive a wedge between husband and wife [under] the guise of impeaching based on credibility."

B.

Evidence aside from the Dinneens' testimony undermined the existence of any written contract. Russo produced a contract with his and the Dinneens' signatures. A forensic document examiner opined that someone "cut and pasted" the Dinneens' signatures from another document onto the alleged contract. The signatures originated from a discovery verification page that Russo obtained when he delivered it from the Dinneens to their attorney. The trial court thus found that the written contract was "not genuine." "[M]ore likely than not," Russo used the verification page to "lift, copy[,] and paste the Dinneens' signatures onto [the alleged contract] in an effort to create a written agreement where none was entered into."

Similarly, trial evidence refuted the existence of a valid oral contract. Although Russo presented emails from February 2018 that purported to confirm his agreement with the Dinneens, Russo testified that Patrick told him in late 2017 that he would not pay Russo any money from the unit's sale.

4

Consequently, the trial court ruled that the oral contract claim was time-barred because Russo sued the Dinneens "more than two years after [he] knew, or should have known, of the breach." (See Code Civ. Proc., § 339.) The trial court found that the oral contract claim also failed "on the merits," as it disbelieved Russo's testimony about any verbal agreement given his "false testimony" about the written contract and found the Dinneens' testimony "the more credible account by a long shot."

The trial court therefore entered judgment in the Dinneens' favor.

## II.

Russo raises three issues on appeal. First, he contends the trial court displayed bias against him and in favor of the Dinneens. Second, Russo argues the trial court erred when it prevented questioning and evidence about the Dinneens' prior inconsistent statements. Third, Russo claims the rulings on the prior inconsistent statements and the trial court's decision to end Patrick's cross-examination due to fatigue infringed Russo's right to be heard.[1]

We address the state of the appellate record before turning to the merits. For the reasons discussed below, we affirm the judgment.

## A.

Russo, as the appellant, "had a duty to provide this court with an adequate record on appeal." (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th

---

[1] At oral argument, Russo's counsel mentioned an owner/builder exception to Business & Professions Code section 7031's bar on recovery by an unlicensed contractor, an argument he claims to have raised on appeal. It is not among the three appellate issues Russo identified in his brief. Although Russo mentioned "legal exceptions to that law" and later quoted reference to an " 'owner/builder license' " when discussing the trial court's purported bias against him, he offered no reasoned argument or citations to authority on this point. As a result, "we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

492, 498.) Russo's claims involve exhibits that the trial court prevented him from using to impeach the Dinneens. The appellate record, however, contains no exhibits. The Dinneens argue we thus "must assume" all findings about those exhibits were correct. Russo asserts he tried to add the exhibits to the record and stands "ready to submit his exhibits whenever" we are "ready to receive them." Russo's counsel's unsupported representation in the reply brief about attempting to lodge exhibits is not evidence. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 (*Oliveira*).) And the explanation does not comply with appellate procedure. Russo could have moved to augment the record. (Cal. Rules of Court, rule 8.224(c).) He never did.

Generally, we must affirm the judgment when the appellant fails to provide an adequate record for review. (*Oliveira*, *supra*, 206 Cal.App.4th at p. 1362.) But because the crux of this appeal is the court's conduct during trial and the record includes the reporter's transcript, we conclude the exhibits are not necessary for our review. Thus, we proceed to the merits.

B.

Russo accuses the trial court of violating due process because it "acted with bias against" him and "displayed a partiality in favor of the Dinneens." A due process claim of judicial bias is subject to an "exceptionally stringent standard" and is reversible error only when " 'extreme facts' demonstrate a probability of actual bias." (*Schmidt*, *supra*, 44 Cal.App.5th at pp. 588-589.) "It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation." (*Id.* at p. 589.)

Russo does not identify such extreme facts here. He points to where the trial court: (1) explained during motions in limine that, under Business & Professions Code section 7031, those "who do contracting work without a license[ ] are not entitled to get paid for that [work], period"; (2) asked what

6

Russo meant when he used the phrases "sit there" and "sat there"; (3) commented on Russo, a 45-year-old man, living rent-free in the Dinneens' properties; and (4) voiced the "logical inference" that Russo was not listed as an owner of the restaurant because "he had bad credit" and then told Russo to stop smirking at him. Russo also perceives bias favoring the Dinneens when the trial court: (1) commented on Patrick's tremor and limited his time on the witness stand after observing that he was "clearly . . . getting tired"; (2) precluded Russo from impeaching Patrick about what information he shared with his wife on the basis of "[u]ndue consumption of time and minimal relevance" because the trial court later opined that it was not "appropriate . . . to try to drive a wedge between husband and wife [under] the guise of impeaching based on credibility"; and (3) gave the Dinneens more "latitude" than Russo when questioning witnesses.

Whether considered individually or collectively, these statements do not show bias. For example, the trial court's decisions to cut short questions on collateral matters and admonish Russo to stop smirking are not "clear evidence of bias," but rather instances of the court "merely exercising its power to control the trial." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1108.) Similarly, rulings against a party, even if "[n]umerous and continuous," "are not grounds for a finding of bias." (*Schmidt, supra,* 44 Cal.App.5th at p. 589.) Nor are "[m]ere expressions of opinion" about the individuals in this case "based on observation of the witnesses and evidence," particularly during a bench trial with no jury that might be influenced by the judge's comment. (*Ibid.*) In sum, the record does not demonstrate that the trial court displayed reversible bias toward Russo.

7

## C.

Russo's other claims relate to the Dinneens' testimony. Russo argues the trial court improperly excluded evidence of the Dinneens' prior inconsistent statements, and thus impeded his ability to impeach their credibility. In addition, Russo contends the trial court deprived him of due process through those evidentiary rulings and when it limited how long Russo could cross-examine Patrick. We conclude that no prejudice resulted from these rulings.

## 1.

We observe at the outset that trial courts have "inherent power to control litigation before them" and possess "broad authority over the admission of evidence." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1377, 1379.) Courts properly exercise this broad discretion when excluding collateral facts offered for impeachment purposes. (*People v. Lavergne* (1971) 4 Cal.3d 735, 743.) In addition, trial courts may restrict the length of witness testimony, as "[t]rial time management is an ongoing responsibility of the trial judge, regardless of the case's complexity, the number of witnesses called[,] or whether specific time limits have been imposed." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 20.) Relatedly, trial courts are required to "exercise reasonable control" over witness interrogation to make it "as rapid . . . and as effective for the ascertainment of the truth, as may be, and to protect the witness from undue harassment or embarrassment." (Evid. Code, § 765, subd. (a).) Finally, in a bench trial, the trial court has the power to "believe or disbelieve" witnesses for any rational reason subject to "extremely deferential review." (*Schmidt, supra*, 44 Cal.App.5th at p. 582.)

We need not decide if the trial court erred here when it limited (1) impeachment on what it deemed collateral matters and (2) the length of examining an elderly witness, however, because we conclude that those decisions did not prejudice the outcome of the case.

2.

We limit our discussion to the question of prejudice because we must affirm a judgment unless, based on the entire record, "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Estate of Lagersen* (1959) 169 Cal.App.2d 359, 368 [affirming despite "denial of the right of cross-examination" because no miscarriage of justice].) No miscarriage of justice exists unless it is "reasonably probable" that the appellant would have obtained a more favorable result absent the alleged errors.[2] (*People v. Watson* (1956) 46 Cal.2d 818, 836.) In other words, an error has consequence on appeal only if it " 'did in fact prejudice the defendant.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Here, Russo has not met his burden to prove prejudice. By the time the Dinneens testified, only two causes of action remained: breach of written contract and breach of oral contract. Had he "given his full presentation of evidence," Russo argues that it "would have cast doubt on the Dinneens' credibility" and "undermined their defense that they never entered into a contract with [him]." We disagree.

Based on our review of the record, it is not reasonably probable that the trial court would have found in Russo's favor on the contract claims even if it had permitted further impeachment and cross-examination and, as Russo

---

[2]   Although Russo claims the trial court denied him due process when it limited his time to cross-examine Patrick, he argues prejudice under only the "reasonably probable" standard. We accept the parties' apparent agreement on this standard.

9

contends, disbelieved the Dinneens' testimony as a result. For the written contract, uncontradicted expert testimony established that the Dinneens did not sign it and instead their signatures were "cut and pasted" from another document. Another non-Dinneen witness confirmed that Russo had access to the document from which the Dinneens' signatures were lifted. This evidence supports the trial court's finding that the written contract was "not genuine," but rather "more likely than not" forged by Russo. As for the oral contract, although the trial court relied in part on the Dinneens' credibility for its finding on the merits, Russo's own testimony established that the claim was time-barred.

Russo does not explain how impeaching the Dinneens would have affected the trial outcome given this other evidence. He avoided this evidence entirely in his opening brief, later claiming that "there were no more facts relevant to this appeal." We, however, find this evidence directly relevant to the question of prejudice, as it persuades us that the errors claimed on appeal were harmless.

III.

We affirm the judgment. The Dinneens are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

                                                                                 CASTILLO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.